440 So.2d 812 (1983)
Mary McCASTLE, et al.
v.
ROLLINS ENVIRONMENTAL SERVICES OF LOUISIANA, INC., et al.
No. 83 CA 0027.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
Rehearing Denied November 22, 1983.
*813 Stephen Irving, Dennis Whalen, Baton Rouge, for plaintiff-appellant Mary McCastle.
Walter J. Hryszko, New Orleans, for defendant-appellee Exxon Corp.
Wallace Hunter, Baton Rouge, for defendant-appellee Rollins Environmental Services of La. Inc., Rollins Environmental Services (LA) Inc., Charles Callicott.
Before COVINGTON, COLE and SAVOIE, JJ.
SAVOIE, Judge.
The plaintiffs, Mary McCastle and nine other persons, brought this suit as a class action[1] against Rollins Environmental Services of Louisiana, Inc. and others seeking damages allegedly sustained from the release of odors and fumes from the defendant's "land farm operations" chemical waste disposal site. Included among the defendants was Exxon Corporation, appellee in this instance. Exxon was included as a defendant due to its alleged use of the Rollins'"land farm operations." The defendant filed a peremptory exception opposing the use of the class action in these circumstances. The trial court sustained the exception and dismissed the plaintiffs' suit.
Plaintiffs have appealed, asserting that the trial court erred in refusing to certify the class to (1) determine liability for damages resulting from odors and fumes emitted from the Rollins site, and (2) grant injunctive relief prohibiting Rollins from emitting such odors.
As to assignment of error number two, injunctive relief was never sought against Exxon since the "land farm operations" were owned and operated by Rollins. Accordingly, the sole issue before this Court is whether the trial court erred in granting defendant's peremptory exception of improper use of a class action and refusing to certify this tort litigation as a class action. We are of the opinion that it did not.
Our Supreme Court in Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144 (La.1975) enunciated the criteria to be used in making the determination of the availability of the class action procedure found in L.S.A.-C. C.P. art. 591, et seq. It did so to resolve a conflict among the various circuits regarding such criteria. Further refining of these criteria was effected in Williams v. State, 350 So.2d 131 (La.1977) and State ex rel. Guste v. General Motors Corporation, 370 So.2d 477 (La.1979).
L.S.A.-C.C.P. arts. 591(1) and 592 provide that the class action procedure is available when the following requirements are present: (1) a class so numerous that joinder is impractical; (2) the joinder as parties to the suit of one or more parties who are (a) members of the class, and (b) so situated as to provide adequate representation for absent members of the class; and (3) a common character between the rights of the representatives of the class and the absent members of the class.
*814 When, as in the instant case, it appears that the first two requirements are met, the relevant inquiry becomes whether "the character of the right sought to be enforced ... is ... common to all members of the class", L.S.A.-C.C.P. art. 591, which is not to be answered merely by a finding that there are common questions of law or fact. Williams, supra, at 133. The concerns involved in the determination that a common character exists, enunciated by the court in Stevens, supra, were:
"In determining how the legislature intended the courts to define and apply the concept of allowing a class action to enforce rights with a common character, we are mindful of the basic goals or aims of any procedural device: to implement the substantive law, and to implement that law in a manner which will provide maximum fairness to all parties with a minimum expenditure of judicial effort. Implicit, then, in decisions that rights are of a common character is a consideration of the extent to which a clear legislative policy might be thwarted, or hampered in its implementation, by the lack of availability of the class action device.
"But this does not end the inquiry. Fairness to the parties demands at the least that the relationship between the claims of members of the class should be examined to determine whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action."
The proposed class in this instance is comprised of approximately four thousand persons. As many separate suits would certainly pose a significant risk of inconsistent adjudications. Further, earlier separate determinations might be prejudicial to subsequent separate litigation. However, as the plaintiffs have claimed that the defendant has committed 129 separate acts violative of these four thousand persons, and separate examinations would be required to establish liability and damage to each, we find the court would not be unduly burdened by separate suits. Guste, supra. Accordingly, the first criterion preponderates toward not certifying the class.
Our second consideration is whether the prosecution of separate actions would pose a serious threat of substantially impeding the ability of class members to protect their interests. Here, while there is a claim that this purported class is particularly impoverished or isolated, it should be noted that each plaintiff seeks damages in the amount of $1,290,000.00. As such, the members of the purported class have a vital interest in controlling their own litigation. Ouellette v. International Paper Company, 86 F.R.D. 476 (D.Vt.1980). Accordingly, we find that this criterion also preponderates toward not certifying the class.
Thirdly, we must consider whether the defendant will resist liability based upon defenses generally applicable to the entire class. Defendant contends that the number of incidents alleged and numerous plaintiffs make it impossible for it to determine any possible defenses until each plaintiff has been questioned. We find that the reasons for defendant resisting liability will not generally be applicable to the entire class. Finding such to be true, plaintiffs have failed to meet the third criterion for securing class certification.
The fourth consideration is whether the questions of law and fact are common to all the class members. In the instant case, plaintiffs allege 129 separate incidents of a release of odors and fumes. While our courts have extended the penumbra of class action to "mass tort" claims, such cases have dealt with a single act of negligence or single tragic happening. See Livingston Parish Police Jury v. Illinois Central Gulf Railroad Company, 432 So.2d 1027 (La.App. 1st Cir.1983); and Millet v. Rollins Environmental Services of Louisiana, Inc., 428 So.2d 1075 (La.App. 1st Cir.1983).
*815 In Yandle v. P.P.G. Industries, Inc., 65 F.R.D. 566 (E.D.Tex.1974), the court denied class certification because there were varying periods of exposure to varying concentrations of the pollutant (i.e., asbestos). It stated:
"This case is very different from the single mass accident cases that have in the past allowed a class action to proceed on the liability issues. Those cases have normally involved a single tragic happening which caused physical harm or property damage to a group of people, and affirmative defenses are absent. Usually, one set of operative facts will establish liability. Here we have two lawsuits covering a ten year span of time in which the nine defendants acted differently at different times. The Court is in agreement with the defendant that there is not a single act of negligence or proximate cause which would apply to each potential class member and each defendant in this case."
In short, the uncommon question bearing on defendant's liability to each class member is predominant. Viewed another way, the class to whom the defendant would be liable cannot be defined without separate trials on the liability issues.
In Boring v. Medusa Portland Cement Co., 63 F.R.D. 78 (M.D.Pa.), appeal dismissed, 505 F.2d 729 (3rd Cir.1974), class certification was sought by nearby residents of the defendant corporation's operations. Plaintiffs alleged that the defendants released contaminants into the air. Observing that the only common fact alleged by the claims of the proposed class was that their damages were caused by the same source, class certification was denied. Here, as there, we find this to be true. While we are of the opinion that the defendant owes a substantial duty not to release odors or fumes into the air which cause damage, we find such duty does not predominate over the multitudinous questions presented by 129 separate incidents each involving 4,000 possible plaintiffs. Thus, plaintiffs have also failed to meet the fourth criterion.
Our final consideration is whether the class action is the superior procedural vehicle for a fair and efficient adjudication of the controversy. Four factors must be considered in such determination. The first factor is whether the members of the class have demonstrated an interest in controlling the prosecution of their individual claims. In the instant case, approximately 490 individuals out of the alleged 4,000 members of the class have sued the defendant individually. Accordingly, we find that the vast majority of the members of the class have demonstrated no such interest. Secondly, we must consider judicial economy. We agree with the defendant's assertion that the number of times exposed, varying degrees of exposure, and extent of damages each class member has suffered would require a cross-examination of every plaintiff to determine both the liability and damage issues. Accordingly, we see no judicial benefit to this class action.
The third factor is the desirability of concentrating the litigation in one forum. This determination is not crucial here as all of the individual suits would also be brought in the same judicial district court.
The fourth factor is the difficulty to be encountered in the management of a class action. As stated above, the possibility of examining and cross-examining 4,000 individuals concerning 129 separate incidents would tax both the trial judge and the court's facilities beyond manageable limits.
Additionally, we point out that the trial judge has much discretion in ascertaining whether a class action should be maintained. Stevens, supra. Here, the trial judge found, as a matter of fact, that the class in this matter was not easily identifiable, the size of the individual claims was such that individual prosecution was warranted, and that judicial efficiency would not be served by a class action. We concur in the trial court's judgment.
For our reasons aforestated and because of the trial court's reasons and rulings, we find that the trial court was correct in not *816 certifying the class. Plaintiffs are to pay all costs.
AFFIRMED.
COVINGTON, J., dissents for reasons assigned.
COVINGTON, Judge, dissenting.
I respectfully dissent. The factors requisite to maintain the class action, i.e., numerosity, commonality, typicality and representivity, are present. The case at bar is indistinguishable from Millet v. Rollins Environmental Services of Louisiana, Inc., 428 So.2d 1075 (La.App. 1st Cir.1983). I would reverse.
NOTES
[1] Plaintiffs alleged that they are, or were residents of the communities of Alsen, Parkwood Terrace, Lincoln Heights, Saint Armalee, Sunshine Road and the surrounding areas in the Parish of East Baton Rouge in close proximity to the Rollins waste disposal facility. Plaintiffs sued individually and on behalf of all others similarly situated, approximately 4,000 persons.