456 So.2d 612 (1984)
Mary McCASTLE, et al
v.
ROLLINS ENVIRONMENTAL SERVICES OF LOUISIANA, INC., et al.
No. 83-C-2621.
Supreme Court of Louisiana.
September 10, 1984.
Rehearing Denied October 4, 1984.
*614 Stephen M. Irving, Dennis Whalen, Baton Rouge, for applicant.
E. Burt Harris, Trial Atty., Walter J. Hryszko, Elliott G. Courtright, New Orleans, Wallace Hunter, Baton Rouge, for respondents.
*615 DENNIS, Justice.
In this case plaintiffs brought a suit for injunctive relief and damages alleging that a chemical land farming operation near their homes had polluted the air and caused them injury. See also 415 So.2d 515. The plaintiffs petitioned for certification of a plaintiff class for a class action pursuant to La.C.C.P. articles 591-92. The trial court sustained one defendant's exception to the class action on the grounds that the members of the proposed class were not easily identifiable, that there were variations in the plaintiffs' injuries, and that the plaintiffs had prayed for large amounts of individual damages. A majority of a divided court of appeal affirmed because the defendants' defenses would not be generally applicable to the entire class, the plaintiffs alleged 129 tortious acts, the vast majority of the class has demonstrated no interest in controlling prosecution of its claims, a class action was not in the interest of judicial economy, and the class action would present management problems. We reverse. The pleadings and the showing in this case indicate clearly that a class action should be allowed because the class is so numerous that individual joinder is impractical, the representative parties are proper champions of the class, and a common character exists among the rights of the members of the class, as evidenced by the superiority of the class action over other available adjudicatory methods for effectuating substantive law, judicial efficiency and individual fairness.

FACTS
Plaintiffs have made the following allegations as the basis of their suit. Plaintiffs are among approximately 4000 residents of East Baton Rouge Parish who live near a hazardous waste disposal facility owned by Rollins Environmental Services, Inc., and operated by Rollins Environmental Services (Louisiana) Inc. Exxon Corporation is the generator of chemical sludge material which is being land farmed (a method of hazardous waste disposal) by Rollins at its facility. On numerous occasions between March 6, 1980 and February 21, 1981, the land farming operation produced nauseating chemical fumes causing plaintiffs' illness and discomfort with burning eyes, sore throats, and upset stomachs. The chemical fumes have generally increased the risk of diseases, such as asthma, cancer and heart disease. Rollins and Exxon have knowledge of the pernicious qualities of the chemical sludge and its effects upon the residents but nevertheless intend to continue supplying and land farming the waste material. Exxon has, in fact, given Rollins financial and technical supervisory assistance in establishing and maintaining the land farm operation.
Plaintiffs requested certification of the class consisting of approximately 4,000 persons residing in the communities near the defendants' hazardous waste and land farm facility. On behalf of this class plaintiffs seek monetary damages and injunctive relief ordering defendants to shut down its hazardous waste and land farm operations.
A hearing was held on the exception of improper use of a class action. The testimony at that hearing indicates that the members of the class live in a low income area. The odors and fumes which were present on various occasions in the area were probably released from the defendants' land farm. The disposal of hazardous wastes at the land farm facility was an on-going operation. The continuous practice of land farming chemical waste was apparently the cause of the odors and fumes affecting the residents. The effects of the fumes from the land farm on individuals in the area included the tightness of chest, difficulty in breathing, headaches, and tearing of the eyes. Although the plaintiffs alleged other effects, these are the only effects testified to at the hearing. The testimony also indicates that the fumes were present in the area on numerous occasions and that the location and density of the fumes sometimes depended on the wind conditions. After the hearing the trial court sustained the exception and dismissed plaintiff's suit as a class action. On appeal, the court of appeal affirmed. *616 McCastle v. Rollins Environmental Services of Louisiana, Inc., 440 So.2d 812, 814 (La.App. 1st Cir.1983). We granted certiorari to review the previous courts' selection and application of class action precepts.

DISCUSSION

Basic Class Action Rules
The Louisiana class action has been discussed extensively in three previous opinions of this court. State ex rel Guste v. General Motors Corp., 370 So.2d 477 (La.1978) (on rehearing); Williams v. State, 350 So.2d 131 (La.1977); Stevens v. Board of Trustees, 309 So.2d 144 (La.1975). As stated in those cases La.C.C.P. articles 591(1) and 592 establish the basic requirements for a class action:
1. A class so numerous that joinder is impracticable, and
2. The joinder as parties to the suit one or more persons who are
(a) members of the class, and
(b) so situated as to provide adequate representation for absent members of the class, and
3. A "common character" among the rights of the representatives of the class and the absent members of the class.
See Guste, supra, 370 So.2d at 487; Williams, supra, 350 So.2d at 133; Stevens, supra, 309 So.2d at 150.
The court of appeal acknowledged that the first two requirements for a class actionimpracticability of joinder and adequate representationare present. See McCastle, supra, 440 So.2d at 814 (La.App. 1st Cir.1983). Thus, the appellate court's decision was based on a finding that a "common character" was not present among the rights of the would-be class members.

Overview of "Common Character" Analysis
Lawyers for a long time have perceived that some litigious situations affecting numerous persons "naturally" or "necessarily" call for unitary adjudication. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments to the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 386 (1967). Modern practice starts with the well-agreed proposition that there is no basis for a class action unless the class is so numerous as to make individual joinder impracticable, questions of law or fact exist common to the class, and the representative parties are proper champions of the class. Kaplan, supra, at 387. Fed.Rule 23(a); La.C.C.P. arts. 591-92. But something else needs to be added to make for a "natural" or "proper" class action. Kaplan, supra, at 387.
Under Louisiana practice there must be a "common character" among the rights of the representatives and the absent members of the class in order to make for a proper class action. La.C.C.P. art. 591(1). This is not merely a reappearance of the common questions threshold requirement noted above. The requirement of a "common character" restricts the class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Cf. Proposed Amendments to Rules of Civil Procedure for the United States District Courts, Rule 23, Advisory Committee's Note, 39 F.R.D. 69, 102-103. Its object is to identify the cases where a class action promises important advantages of economy of effort and uniformity of result without undue dilution of procedural safeguards for members of the class or for the opposing party. It invites a close look at the case before it is accepted as a class action and even then requires that it be specially treated. Cf. Kaplan, supra, at 389-390.
When a "common character" of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness. Guste v. General Motors Corp., 370 So.2d 477, *617 488 (La.1978); Williams v. State, 350 So.2d 131, 133-34 (La.1977); Stevens v. Board of Trustees, 309 So.2d 144, 151 (La.1975). Therefore, if the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual fairness would be better served by some other procedural device.
Many class action related circumstances in a particular case may contribute toward or detract from the intertwined goals. Non-exhaustive lists of some of the factors, which may appear in any given case with varying degrees of intensity, are set forth by Federal Rule 23(b)[1] and the Uniform Class Actions Act[2] and have been suggested for use by this court. See Stevens, supra, 309 So.2d at 150-51; Williams, supra, *618 350 So.2d at 134, n. 3. After identifying the listed factors and any relevant unlisted ones that may be present in the case, the trial court must evaluate, quantify and weigh them to determine to what extent the class action would in each instance promote or detract from the goals of effectuating substantive law, judicial efficiency, and individual fairness. Upon arriving at an estimate of the class action's overall effectiveness in furthering the intertwined goals, the court must compare this with its assessment of the effectiveness of other adjudicatory methods and decide whether the class action is the superior procedural device.
In determining whether a class action in a particular case will promote enforcement of legislative policy, fairness and efficiency, the trial court must actively inquire into every aspect of the case and should not hesitate to require showings beyond the pleadings. Stevens, supra, 309 So.2d at 152. Once the threshold requirements have been met and a prima facia showing for a class action has been made, the court must assume primary responsibility for directing the inquiry because of the effects its decision may have upon substantive law, absentees, and the court system.

A Class Action Is Superior to Other Procedural Methods
The circumstances shown here clearly favor allowance of a class action. A consideration of the pleadings and the showing in light of the pragmatic factors suggested by Williams and Stevens predominately indicates that a class action is superior to other procedural methods available for the fair and efficient adjudication of the controversy and the effectuation of substantive law.
Effectuating Substantive Law
Plaintiffs have asserted causes of action in behalf of a class of some 4000 residents and property owners for personal injuries caused by the emission of noxious odors, fumes and gases from defendant's hazardous waste land farming operation. The essence of the causes of action, which arise under Civil Code articles 667, 668, 669, and perhaps 2315 as an abuse of right, see Hero Lands Company v. Texaco, 310 So.2d 93 (La.1975), is that the defendants conducted activities on their premises which unreasonably inconvenienced and personally injured the members of the class for which the defendants are strictly liable. See Hero Lands Company v. Texaco, Inc., supra; Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971).
In assessing the use of a class action in a particular case from the standpoint of effectuating a substantive policy, it may prove helpful for the court to bear in mind two principal ways in which the class action serves this goal:
First, to the extent that they open courts to claims not ordinarily litigated, class actions enable courts to enforce policies underlying causes of action in circumstance where those policies might not otherwise be effectuated. Second, to the extent that they enable courts to see the full implications of recognizing rights or remedies, class action procedures assist courts in judging precisely what outcomes of litigation would best serve the policies underlying causes of action. Class action procedures are fair because courts are more likely to see both the significance of the claims of a plaintiff and the consequences of imposing liability upon a defendant, and thus are more likely to arrive at a substantively just conclusion. Through class action procedures, moreover, the interests of absentees, who may be affected by the litigation regardless of its class nature, are given representation in the litigative process, and thus are more likely to be given their due.
Developments in the LawClass Actions, 89 Harv.L.Rev. 1318, 1353 (1976) (the quoted language outlines the commentators' substantive theory of class actions).
On the other hand, a class action in some instances may tend to skew, rather than to implement faithfully, the legislative policy underlying a cause of action. For example, it is arguable that the increased deterrent *619 effect a class action creates may intensify the already heightened deterrent effect of a stiff penalty provision to a point perhaps counterproductive to statutory policies, thereby discouraging legitimate, socially useful activities. See Developments, supra, at 1361. By relating the pertinent circumstances of a case to these ways in which a class action may promote or distort the implementation of substantive law, the court can more effectively evaluate the extent to which this important goal would be advanced or deterred by a class action.
The evidence taken at the hearing on defendant's exception to plaintiffs' improper use of a class action indicates that in all likelihood the vast majority of the some 4000 claims asserted are for unreasonable inconvenience and minor, temporary illnesses resulting from inhalation of the odors, fumes and gases emitted by defendants' land farm. Although this fact must be considered in determining the propriety of a class action, our conclusion that most of the claims are relatively small is not intended to preclude any party from later proving a large claim. Nonetheless, since the claims do appear to be small, it is probable that a class action would open the courts to many claims which would not ordinarily be litigated because they could not be prosecuted economically as individual actions. Furthermore, it is probable that in a class action the court is more likely to see the significance of the individual claims of the residents based on defendants' land farm emissions and the consequences of imposing liability upon defendants for the results of their useful and otherwise legal activities. Thus, the court is more likely to arrive at a substantively just conclusion, and the absentees are more likely to be given their due in a class action.
The legislative policy underlying these causes of action operates to deter landowners' activities which cause injury and unreasonable inconvenience to others, to cause those who have profited by the activities to disgorge unjust enrichment gained thereby, and to compensate victims injured or unreasonably inconvenienced. If the claims are not asserted in a class action it is evident that many will not be pursued, that the court may not see the true significance of claims or liability, and that the court will therefore be unable to give full realization to the substantive legislative policy. On the other hand, if all claims are successfully enforced in a class action, since recovery by the victims will be limited to the amount required to compensate them fairly, there is little danger in this particular case that the legislative policy will be distorted by an exaggerated deterrent effect.
Judicial Efficiency
A fundamental objective of the class action device is the achievement of economies of time, effort, and expense. See Advisory Committee Notes, supra, 39 F.R.D. 69, 102-103. Because the questions of law or fact common to the members of the class in this case predominate over any questions affecting only individual members, a class action clearly would promote the goal of judicial efficiency more than other available methods.
The single most important issue is whether the defendants' activities on their hazardous waste land farm deprived their neighbors of the liberty of enjoying their own land or caused them unreasonable inconvenience or damage. La.Civil Code arts. 667-669; Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La.1975). Offering the same facts, all class members will strive to establish that the hazardous waste materials placed in the soil by the defendants emitted gases, fumes and odors capable of causing harm and unreasonable inconvenience to persons in the neighborhood. Each class member stands in an identical position with respect to the following issues: (1) whether hazardous waste materials of the quality and quantity capable of causing the damage and unreasonable inconvenience alleged were present at the land farm on the pertinent dates, (2) whether the land farm emitted harmful and malodorous gases on the dates alleged, (3) whether the probable dispersion patterns *620 of the gases and odors emitted include the areas within which the residences of the members of the class are located.
The court of appeal concluded that these common issues did not predominate over the potential individual issues of whether each member of the class was harmed or inconvenienced on the same dates or sustained the same amount of injury. Our appellate brethren fell into clear error. From the pleadings and showing it appears that on all of the dates in question the land farm received similar hazardous waste from the same source and that the land farming operations were conducted consistently. Consequently, there exists as to the totality of issues a common nucleus of operative facts such as would justify allowing the class action to proceed. That individuals may have been injured or unreasonably inconvenienced by noxious gases on varying dates by the defendant's land farm operations does not constitute a material variation in the elements of the class members' claims. See 1 H. Newburg, Class Actions, § 1155 (1977); Esplin v. Hirschi, 402 F.2d 94 (10th Cir.1968). With respect to the question of damages, individual questions of quantum do not preclude a class action when predominant liability issues are common to the class. Guste, supra, 370 So.2d at 489; Williams, supra, 350 So.2d at 136; Stevens, supra, 309 So.2d at 149; 1 H. Newburg, supra, § 1155(a).
The court of appeal also erred in concluding that the defenses which will be urged by defendants will not be generally applicable to the entire class. In fact, the pleadings and the showing suggest that, with respect to the predominant liability issues, there will be no material deviations because such individual defenses as contributory negligence and assumption of risk are wholly inapplicable. See Williams, supra, 350 So.2d at 135.
We likewise disagree with the intermediate court as to the manageability of a class action in this case. Although difficulty may be encountered in managing this litigation, it does not outweigh the economies to be derived from unitary adjudication. The location of virtually all the witnesses and members of the class in the same vicinity, as well as identity of the main issues of liability in all claims, will facilitate a prompt, efficient, and relatively inexpensive single trial on the common nucleus of issues. Further, the interested parties appear to be so numerous, 490 having joined as plaintiffs so far, that the courts would be unduly burdened by their separate suits or by their joinder or intervention by formal pleadings in non-class actions separately brought. It cannot be denied that the resolution of class action issues places added responsibilities and burdens on the trial court. But if there is to be an error made, it should be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require. La.C.C.P. art. 593.1(B); Esplin v. Hirschi, 402 F.2d 94 (1968); 1 H. Newburg, supra, § 1160(e).
With respect to identification of the members of the class, the trial court erred in denying the class action on the grounds that it would be difficult to identify all of the members of the class. It is not essential that every member of the class be identified before a class action can be certified. Difficulty in identifying the claimants is one of the factors which makes joinder impracticable and a class action appropriate. Verdin v. Thomas, 191 So.2d 646 (La.App. 1st Cir.1966); Phillips v. Joint Legislative Comm., 637 F.2d 1014 (5th Cir.1981). To prevent a class action on the grounds that every member of the class cannot be identified would bar the class action where it is usually needed most. See 1 H. Newberg, Class Actions § 1105(h). Therefore, as long as the class itself is reasonably identified, it is not necessary that all the members of the class be identified at the commencement of the action.
Ultimately, problems of manageability must be added to any other disadvantages *621 of a class action in a particular case and weighed with them against all of the benefits of unitary adjudication in that case to determine whether a class action is superior to other available methods of adjudication. Only if the net benefits of a class action in a particular case are so small in comparison with the net advantages of other adjudicatory methods as to make the class action an inferior method for that case should the court refuse to certify a class. Cf. Pruitt v. Allied Chemical Corp., 85 F.R.D. 100, 115 (Ed.Va.1980). Moreover, in assessing the difficulty of managing a class action in the case at hand, the court must take into account how the problems may be ameliorated by use of the procedural devices at its command. Under La.C.C.P. art. 593.1(C) the court may adopt a plan for the management of the class action subdividing the action and separating the issues for trial. For example, the plan may provide for separate trials of the issues in this order: (1) liability issues, (2) determination of damage items common to the class and the basis for assessment thereof, (3) assessment of common damages on an appropriate basis, (4) determination and assessment of individual damages not common to the class in one or a series of trials involving one or more members of the class. Furthermore, the court may at any time before decision on the merits alter, amend or recall its certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action. La.C. C.P. art. 593.1(B). See also Shelter Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. 34, 38-39 (S.D.N.Y.1977); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D.Ca.1967); Manual For Complex Litigation, 1.42-1.44 (West 1982).
Fairness to the Parties
Another fundamental objective of the class action device is the promotion of uniformity of decision to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Advisory Committee Notes, 39 F.R.D. 69, 102-103. In determining whether it would be unfair to require separate adjudications, for instance, the courts should consider the precedential value of the first decision, as well as the extent of injustice that will be produced by inconsistent judgments in separate actions. Another factor to be considered, for example, is the size of the claims of the absent members of the class, for the greater the claim, the greater the interest of its owner in prosecuting it in a separate action. Stevens, supra, 309 So.2d at 151.
The plaintiffs allege that approximately 4,000 persons suffered unreasonable inconveniences or injuries arising from the defendants' land farming operations. Despite the prayer of the plaintiffs' petition, the showing indicates that similar if not identical damages, small in nature, were sustained by each. As noted in our discussion of the other goals of procedural law, the evidence as to the nucleus of liability issues must be identical for each claim. Based on these circumstances, we conclude that a class action is clearly the fairest method for adjudication of these claims.
Four thousand separate suits involve the danger of inconsistent determinations and of earlier separate adjudications with prejudicial effect upon subsequent separate litigation. Stevens, supra, 309 So.2d at 151; Williams, supra, 350 So.2d at 135. Due to the smallness of the recovery apt to be allowed to each member of the class, no substantial interest adverse to allowing a class action exists in favor of individual control by members of the class of separate action. Williams, supra at 135.

CONCLUSION
In conclusion, a pragmatic rather than formalistic review of the pleadings and the showing made herein clearly indicates that a class action would be superior to other available adjudicatory methods for effectuating substantive law, judicial efficiency and individual fairness in this case. Accordingly, all other requisites for a class action having been fulfilled, certification of a plaintiff class should be permitted.

*622 DECREE
For the reasons assigned, therefore, we reverse the dismissal and order the reinstatement as a class action of this suit. We remand it to the district court for further proceedings consistent with the opinion and with law, particularly La.C.C.P. art. 593.1. All costs to await the final termination of this suit.
REVERSED AND REMANDED.
MARCUS, J., dissents.
BLANCHE, J., dissents being of the opinion that the court of appeal correctly affirmed the trial court's refusal to certify this tort litigation as a class action.
NOTES
[1] Federal Rule of Civil Procedure 23(b) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in their particular forum; (D) the difficulties likely to be encountered in the management of a class action.
[2] The Uniform Class Actions Act, Section 3(a) (National Conference of Commissioners on Uniform State Laws (1976)) (reprinted at 12 Uniform Laws Annotated, Supp. (1984, p. 21)), provides in pertinent part:

(a) In determining whether the class action should be permitted for the fair and efficient adjudication of the controversy, ... the court shall consider, and give appropriate weight to, the following and other relevant factors:
(1) whether a joint or common interest exists among members of the class;
(2) whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class;
(3) whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;
(4) whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole;
(5) whether common questions of law or fact predominate over any questions affecting only individual members;
(6) whether other means of adjudicating the claims and defenses are impracticable or inefficient;
(7) whether a class action offers the most appropriate means of adjudicating the claims and defenses;
(8) whether the members not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions;
(9) whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding;
(10) whether it is desirable to bring the class action in other forum;
(11) whether management of the class action poses unusual difficulties;
(12) whether any conflict of laws issues involved pose unusual difficulties; and
(13) whether the claims of individual class members are insufficient in the amounts or interest involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.