694 So.2d 537 (1997)
Alfredo APOLINAR, et al.
v.
PROFESSIONAL CONSTRUCTION SERVICES, INC.
No. 96-CA-1492.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1997.
*538 Dwight W. Norton and Bernard V. Davis, Metairie, for Plaintiff/Appellant Alfredo Apolinar.
Robert E. Leake, Jr., Donald E. McKay, Jr., Leake & Andersson, New Orleans, for Defendant/Appellee Professional Construction Services, Inc.
Before BARRY, LOBRANO, PLOTKIN, WALTZER and MURRAY, JJ.
MURRAY, Judge.
Plaintiffs, five employees of Professional Construction Services, Inc. (PCS), appeal both the trial court's refusal to certify this proceeding as a class action as well as a denial of their motion to compel discovery. In the exercise of our supervisory jurisdiction, we reverse both judgments and remand with instructions for further proceedings.

FACTS AND PROCEDURAL HISTORY
Alfredo Apolinar filed this suit in June 1994, seeking unpaid overtime wages plus interest, penalties and attorney fees under La. R.S. 23:631 et seq., claiming that PCS had failed to comply with an overtime provision in its public works contract for a certain project. Mr. Apolinar alleged that laborers were paid overtime on the project only if they worked more than forty hours a week, but PCS's contract specified that overtime would also be paid when an employee worked more than eight hours a day. Because the project's workweek allegedly consisted of four ten-hour days, Mr. Apolinar claimed that overtime pay was owed to himself as well as "all other laborers and mechanics" who had worked for PCS on that project. PCS's initial defense to the claim, that the contractual provision was ineffective because its inclusion in the bid specifications was illegal, was ultimately rejected by the Supreme Court, and the matter was remanded for further trial court proceedings. Apolinar *539 v. Professional Const. Serv., 95-0746 (La.11/27/95), 663 So.2d 17.
When the matter was returned to district court, an amending petition was filed to add Alan Therence as a named plaintiff and to obtain class certification based upon the allegation that "in excess of 60 persons" also were entitled to the same relief.[1] PCS opposed certification as a class action, arguing that neither the numerosity nor common character requirements were met. In support of its opposition, PCS submitted the affidavit of Edward J. Abate, Jr., its vice-president. The affidavit attested to Mr. Abate's ability to easily identify, by name, address, employee number and social security number, each employee who worked for PCS as a laborer on the project at issue. The affidavit also attested to Mr. Abate's personal knowledge of the number and identity of each employee who worked on the project at issue as an hourly employee as laborer or mechanic, and the number of hours and on what dates each employee worked. Attached to this affidavit was a computer printout showing weekly pay data for 136 different employee numbers.[2] Neither the affidavit nor the computer list indicates how many, or how few, of the 136 laborers worked over eight hours on any day during the project, which appears to have ended in February 1994.
After submission of additional memoranda by both parties, a hearing was held during which the trial court noted:
I read your memos, I don't think it's appropriate for a class action at this point. Now if there isyou all go back and look, he is giving you what he has, he knows them by name, give them to him, if you can figure it out. At this point it is not right for class action. I understand your argument, some people may be left out, that happens every day whenever somebody claims to be a part of a group of people are effected [sic], I mean sure, I just don't see it at this point, and I am not going to certify a class at this point. [Emphasis added.]
In response to this statement, plaintiffs' counsel offered testimony from the named plaintiffs to establish that they were aware of 70 to 80 other employees who they believed were in the same situation as they. The trial court refused to permit this evidence, stating:
They can bring their own action. I am not going to certify a class, if it gets down to a bunch of them file their suits and they all get consolidated.... But what I am saying is I am not going to certify it as a class today. If I getthe cases get filed and there are a bunch of them I may end up having to do it, but I don't see it today. I am not going to certify the class today.
A written judgment denying class certification was entered on April 4, 1996.
Relying on the portions of the court's remarks highlighted above, plaintiffs' counsel moved on April 11, 1996 to compel responses to his prior discovery requests for identifying information and payroll data concerning other employees who might be owed overtime. In opposition, PCS argued that because class action status was refused, the requested information was "irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." The defendant further contended that production of the information would violate its employees' privacy rights and its own right to proprietary information necessary to maintaining a competitive advantage; would be overly burdensome and expensive; and "is being requested solely for the purpose of recruiting and soliciting these individuals so as to `create' a class."
After oral arguments, the trial court denied the motion to compel because "[i]f there's no class action, he is not required to give you the names." It was again emphasized that there was no need to certify a class because the employees were identifiable from their time sheets and because plaintiffs' counsel had not established that the workers did not know they might be entitled to additional *540 wages. After entry of a written judgment on May 22, 1996, plaintiffs filed the instant appeal, challenging both judgments.

DISCUSSION

1. Jurisdiction
PCS contends that this court lacks jurisdiction to consider this appeal because both judgments at issue are interlocutory and the plaintiffs have not alleged irreparable harm. This court, however, may review such interlocutory matters under its supervisory jurisdiction, La.Const. art. V, § 10(A), and we do so here. See Cotton v. Gaylord Chemical Corp., 96-2426 (La.10/25/96), 680 So.2d 1187.

2. Class certification
A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is common to all members of the class. La.Code Civ.Proc.Ann. art. 591. The class action is nothing more than a procedural mechanism designed to efficiently and economically manage large numbers of claims in which common issues predominate over individual issues. Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 151 (La.1975). The sole consideration for a trial court in ruling on certification, and for this court in reviewing that ruling, is whether the case at bar is one in which the procedural device of a class action is appropriate. Although a trial court's determination on this issue will not be reversed absent manifest error, the flexibility provided under Article 593.1 of the Code of Civil Procedure weighs in favor of class certification because the decision may be modified at a later time. McCastle v. Rollins Environmental Serv., 456 So.2d 612, 620 (La.1984); Dumont v. Charles Schwab & Co., Inc., 95-2010, p. 3 (La.App. 4th Cir. 2/29/96), 670 So.2d 548, 549.

A. Numerosity
In this case, PCS contends that its employee list establishes that there were "only" 136 laborers who worked on this project, and only five have come forward to claim additional wages under the contract. It is further argued that, as in O'Halleron v. L.E.C., Inc., 471 So.2d 752 (La.App. 1st Cir.1985), and Phillips v. Orleans Parish School Bd., 541 So.2d 226 (La.App. 4th Cir.1989), all members of the potential class are identifiable, thus obviating the need for a class action to adjudicate these claims. Because of the limited number of actual claimants and the lack of evidence concerning others who may have been underpaid, the defendant asserts that the numerosity requirement for class certification is not met.
There is no magic number that will satisfy the numerosity requirement for class certification. What is required is "a class so numerous that joinder is impracticable." McCastle at 616. The numerosity element does not depend upon whether or not the plaintiffs can identify all potential class members; difficulty in identifying the claimants is but one factor which makes joinder difficult. Id. at 620. Instead, class certification requires a definable group of claimants whose joinder is otherwise impractical. Spitzfaden v. Dow Corning Corp., 619 So.2d 795, 798 (La.App. 4th Cir.), writs denied, 624 So.2d 1236-37 (La.1993). In Stevens, for example, the Supreme Court found that a potential class of approximately one hundred members, located throughout this state and elsewhere, justified consideration of class proceedings for refunds of former employees' pension contributions.
The only evidence considered by the court below, the computer printout, establishes that 136 laborers were employed by PCS under the contract at issue. While the defendant maintains that the plaintiffs failed to carry their burden of proof as to which of these employees are owed additional wages, this information is exclusively within PCS's control. PCS has offered an affidavit that establishes that it easily could determine from its records exactly how many of its hourly laborers who worked more than eight hours in any one day were not paid overtime. Despite its admitted ability to do so, PCS has offered nothing to rebut the obvious inference that these laborers, like the five named *541 plaintiffs, were not paid overtime when they worked more than eight hours in any one day. Compare, e.g., Carter v. Benson Automotive Co., Inc., 94-158, 94-261, p. 1 (La. App. 5th Cir. 9/27/94), 643 So.2d 1314, 1315 (defendant's affidavit explaining that only eighteen potential class members existed was sufficient to defeat class certification). Instead, PCS has been adamant in its refusal to provide the information that would allow a definitive determination as to the number of laborers who worked more than eight hours in any one day and were not paid overtime as required by its contract. This situation is thus distinguishable from those presented in O'Halleron and Phillips, relied upon by PCS here. In both of those cases, information provided by the defendant demonstrated that the actual number of potential claimants was less than fifty.[3] In contrast, the record before us establishes that the potential class consists of as many as 136 claimants.[4]
Additionally, joinder must be impractical, not impossible, in order to satisfy the numerosity requirement. Although PCS represents that its records reflect local addresses for all of the employees listed, it has refused to divulge how many, or even if any, of these workers are still employed by it. In view of the length of time that has elapsed since this project was completed as well as the itinerant nature of employment as a laborer, it cannot be assumed that all class members remain in this geographic area. On these preliminary facts, a class action appears to be the appropriate procedural mechanism to handle 136 potential claims.

B. Common character
PCS contends that the common character requirement for class certification is not met here because "[a] class action is not needed to prevent inconsistent judicial determinations or uniformity of decisions" since all any plaintiff need do is prove the number of hours worked in excess of eight on any day. It is further argued that the fact that only five claims have been thus far filed indicates that class proceedings will not contribute to judicial efficiency above what can be accomplished through joinder.
The common character element for class certification requires that there be a relationship between the claims of the purported class members greater than simply a sharing of a common question of law or fact. Stevens, 309 So.2d at 150. This has been interpreted to require that questions of law or fact common to the class members predominate over any questions affecting only individual members, and that the class action be superior to other available methods for the fair and efficient adjudication of the controversy. State ex rel. Guste v. General Motors Corp., 370 So.2d 477, 489 (La.1978). As Justice Tate noted in Stevens, this limits the use of the class action procedural device "to occasions where the class action will be clearly more useful than other available procedures for definitive determination of a common-based right, if such definitive determination in the single proceedings should be afforded in the interests of the parties (including both the class and the opponent[s] to it) and of the efficient operation of the judicial system." Stevens, 309 So.2d at 151.
In this case, PCS appears to argue that because the issue of law concerning the entitlement to overtime under the contract has already been decided, potential class members no longer share a common-based right, but only need to establish the amount of their individual claims. However, the defendant has ignored the remaining issue of law presented by the pleadings, which is the plaintiffs' entitlement under La.R.S. 23:632 to penalties and attorney fees for PCS's failure to make timely payment of all wages due. This question is common to all potential class members and, in fact, now predominates over the issue of the amount of the individual *542 claims.[5] Furthermore, use of a class action to decide whether La.R.S. 23:632 applies and, if so, whether PCS has an equitable defense to the imposition or amount of penalties due, would prevent inconsistent results in adjudicating claims of the affected laborers. See, e.g., Boudreaux v. Hamilton Medical Group, Inc., 94-0879 (La.10/17/94), 644 So.2d 619; Thomas v. Orleans Private Industry Council, Inc., 95-1577 (La.App. 4th Cir. 2/15/96), 669 So.2d 1275, writ denied, 96-0686 (La.4/26/96), 672 So.2d 671.
Judicial efficiency would also be served by class proceedings in this case because evidence relevant to these questions need be presented only once, yet the determination would be binding as to all in the class. Accordingly, the common character necessary for preliminary certification of a class has been established in this case.
Because the parties have not raised the adequacy of representation, the remaining requirement for class certification, we need not address that question.

3. Discovery
PCS argues, and the trial court held, that unless and until plaintiffs establish that the requirements for class certification are met, no discovery concerning the identity of potential class members or the value of the claims involved would be permitted. However, this decision is manifestly erroneous and was a clear abuse of the trial court's discretion.
When the issue of class certification is raised, some showing beyond the pleadings is generally required concerning the issues of numerosity, common character, and adequate representation. Stevens, 309 So.2d at 152-53. As explained above, the plaintiffs in this case have presented a prima facie case for certification, but the information necessary to define the class and to identify and notify potential members is within the defendant's exclusive control. Such information is clearly relevant to these proceedings, as it is reasonably calculated to lead to evidence admissible on the certification issue. See, e.g., Holloway v. City of Alexandria, 506 So.2d 234 (La.App. 3d Cir. 1987). Therefore, PCS must be required to make this information available to plaintiffs' counsel.

CONCLUSION
For the reasons assigned, the judgments below are reversed. The case is remanded to the trial court to enter a preliminary order of class certification defining the class, and to formulate a case management order that would include provisions for notification to class members. The parties are to be permitted full discovery of all information relevant to these issues, subject to necessary and appropriate protective orders. Professional Construction Services, Inc., is to pay the costs of this appeal.

REVERSED AND REMANDED.
BARRY, J., dissents with reasons.
WALTZER, J., concurs with reasons.
BARRY, Judge, dissenting with reasons.
This Court should not address the discovery issue.
Plaintiffs note that defendant's refusal to respond to discovery made it impossible to establish the number of potential class members. However, plaintiffs did not move to compel discovery until five days after the court denied certification and they did not seek supervisory review of the denial. Plaintiffs appealed that interlocutory judgment but did not brief the issue, which must be considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. Therefore, the majority has no basis to address the lack of discovery.
The record supports the finding that numerosity was not established. Numerosity is established when it is shown that joinder would be impractical. Whether the class is sufficiently numerous is not dependent on a specified figure. Adams v. CSX Railroads, 615 So.2d 476, 481 (La.App. 4th Cir.1993). The determination must be made according *543 to the facts of each case. Phillips v. Orleans Parish School Board, 541 So.2d 226, 228 (La.App. 4th Cir.1989); O'Halleron v. L.E.C., Inc., 471 So.2d 752, 755 (La.App. 1st Cir. 1985).
Plaintiffs argue that more than 40 class members creates a presumption that joinder is impractical and cites Vela v. Plaquemines Parish Government, 94-1161 through 94-1164 (La.App. 4 Cir. 6/29/95), 658 So.2d 46. That case involved a class of 150 to 600 members. The statement concerning the presumption was not determinative and constituted dicta. Vela does not control. Although identification of every class member is unnecessary, the party seeking certification should establish a definable group of aggrieved persons. Spitzfaden v. Dow Corning Corp., 619 So.2d 795, 798 (La.App. 4th Cir.) writs den. 624 So.2d 1236, 1237 (La. 1993); Farlough v. Smallwood, 524 So.2d 201, 203 (La.App. 4th Cir.), writ den. 526 So.2d 810 (La.1988).
In Farlough v. Smallwood, supra, plaintiff filed suit challenging the rent adjustment policy of the Housing Authority of New Orleans and asserted that HANO provided housing to over 13,000 persons under a standard lease. She requested that she be certified as a representative in a class action suit. Certification was denied and she appealed. Despite the alleged numerosity this Court affirmed:
In this case, there is no evidence in the record to indicate that all of HANO tenants, or even a substantial number of them, have been aggrieved by the policy. Further, we find that plaintiff has not sufficiently established that there exists a group of people who have requested adjustments and been denied relief. Additionally, the plaintiff has not shown that the alleged aggrieved parties are not identifiable and no obstacles have been shown which might hamper their joinder.
Id. at 203.
PCS provided the employee numbers of 134 people who worked under contract, but it did not provide their names and addresses. The employee list is in code, but appears to show overtime for 75 employees. It is unclear whether overtime was calculated based on forty hours per week or eight hours per day. There is no evidence of the number of employees who were aggrieved because they were not paid overtime wages for working ten hour days. Only five workers filed suit and certification was properly denied due to lack of numerosity.
The record does not establish a "common character" between the representatives of the class and the absent class members, and does not establish that a class action is the superior procedural device. The existence of several important factors shows that the trial court did not abuse its discretion by denying the class certification.
The enforceability of the employment contract's overtime provision in favor of employees who worked more than eight hours per day or forty days per week has already been determined and no longer forms a basis for the class action. Apolinar v. Professional Construction Services, 95-0746 (La.11/27/95), 663 So.2d 17. The only common question of law which remains is whether PSC must pay penalties and attorney fees under La.R.S. 23:632 for not paying overtime.
The "existence of a common question of law or fact does not by itself justify a class action," even if the parties are too numerous to be joined and even though adequate representation is afforded by the typical member(s) of the class who are parties to the suit. State ex rel. Guste v. General Motors Corp., 370 So.2d 477, 487 (La.1979) (on reh'g.); Williams v. State, 350 So.2d 131, 133 (La. 1977); Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 151 (La.1975). Pragmatic criteria must be considered in light of policy goals underlying the class action, i.e., effectuating substantive law, judicial efficiency, and individual fairness. Williams v. State, 350 So.2d at 133.
Rule 23 (b) of the Federal Rules of Civil Procedure provides guidelines to evaluate common character and to determine whether a class action is appropriate. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 617 (La.1984); State ex rel. Guste v. General Motors Corp., 370 So.2d at 487-488; Stevens v. Board of Trustees *544 of Police Pension Fund, 309 So.2d at 150-151.
Relevant factors under Rule 23(b) include 1) whether the prosecution of separate actions by or against individual members of the class would create a risk of a) inconsistent or varying adjudications which will affect subsequent separate litigation, or b) inconsistent adjudications which substantially impair or impede the ability of remaining class members to protect their interests; 2) whether the defendant resists liability for reasons which generally apply to the entire class; 3) whether the class action is the better procedural device for the fair and efficient adjudication of the controversy, based on a) the interest of class members to control the prosecution of individual actions, b) the extent and nature of litigation already begun by class members, c) the desirability of concentrating the litigation in the same forum, and d) difficulties of class manageability. State ex rel. Guste v. General Motors Corp., 370 So.2d at 488-490.
The court must determine whether these and other relevant criteria contribute to or detract from the intertwined goals of the class action. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 617.
The Supreme Court has already decided the enforceability of the employment contract's overtime provision. Apolinar v. Professional Construction Services, supra. There is a risk that if plaintiffs pursue separate actions they could receive inconsistent judgments on penalties and attorney fees. However, I do not believe that an earlier judgment would prejudice the remaining plaintiffs on that issue. See McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 621.
In assessing the effect of an early determination on subsequent separate litigation, State ex rel. Guste v. General Motors Corp., supra, considered whether the earlier ruling would prejudice separate litigation in which different facts might be presented. The Court concluded there was a substantial risk of prejudice in that case.
A determination by one court that the defendant owed no duty to disclose the engine's origin, if affirmed on appeal and with review refused or not sought, could affect other suits in which facts not presented in the first case might give rise to a different result.
Guste, 370 So.2d at 488.
There is no risk that the first judgment would prejudice subsequent separate litigation against PCS. The argument upon which PCS based its refusal to pay overtime is independent of the distinguishing facts of each case. Because the contract provision for overtime pay is enforceable, it appears that the only relevant facts for each plaintiff will be the number of hours worked. The record does not indicate the existence of facts peculiar to each plaintiff which would be presented in different suits and give rise to a different result as to liability for penalties and attorney fees. Thus, a holding by one court that the defendants do not owe penalties and attorney fees, affirmed on appeal, will not prejudice subsequent plaintiffs suing for a different number of overtime hours. See Guste, 370 So.2d at 488.
We must also consider the effect that a class action would have on the law which forms the basis of plaintiffs' cause of action. See McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 618.
The legislative policy behind La.R.S. 23:632 is to deter an employer from withholding wages that are due. That provision is penal and strictly construed. Hughes v. Cooter Brown's Tavern, Inc., 591 So.2d 1334, 1337 (La.App. 4th Cir.), writ den. 594 So.2d 1318 (La.1992). A class action in this case might skew, rather than faithfully implement, the underlying policy by intensifying the already heightened deterrent effect of the statute. See McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d at 618-619. Additionally, a class action might deter other employers from pursuing valid legal defenses to § 632. In my opinion, the class action would distort rather than effectively implement the penalty statute.
The desirability (or undesirability) of concentrating the litigation in one forum and the ease (or difficulty) of managing this litigation as a class action are not substantial factors at *545 this point in the litigation. The record does not disclose the present whereabouts of the potential class members.
PCS's defense apparently would be the same as to all plaintiffs and the class action would efficiently decide whether penalties and attorney fees are due. However, we have no basis to hold that it would be unfair to require separate adjudications.
Considering the above factors which do not contribute to the intertwined goals of the class action, there is no basis to reverse the trial court.
I respectfully dissent.
WALTZER, Judge, concurring with reasons.
I concur with the majority's finding that the facts of this case support reversal of the trial court's denial of class certification. I write separately to clarify the standard applicable to review of trial court actions certifying or refusing to certify class actions, to provide the legal analysis of the commonality issue that I believe is missing from the majority opinion and to set forth the grounds on which I would compel discovery of the employee hourly wage data requested by plaintiffs.

STANDARD OF REVIEW
This Court has held that an appeal court, in determining the appropriateness of a class action, must give wide latitude to the trial court. Such a decision must be affirmed absent manifest error. Lailhengue v. Mobil Oil Co., 94-2114, 94-2115, 94-2116 (La.App. 4 Cir. 6/7/95) p. 4-5, 657 So.2d 542, 545. While it cannot be denied that resolution of class action issues places added burdens on the trial court, if an error is to be made, it should be made in favor of maintenance of the class action, since it is subject to modification should later developments during the course of the trial so require. McCastle v. Rollins Environmental Services of Louisiana, Inc., 456 So.2d 612, 620 (La.1984), citing La.C.C.P. art. 593.1(B).

BURDEN OF PROOF
The burden of proving compliance with the criteria for class action treatment is on the plaintiffs. Spitzfaden v. Dow Corning Corp., 619 So.2d 795, 798 (La.App. 4th Cir.1993), writs denied, 624 So.2d 1236-37.
Articles 591(1) and 592 establish the basic requirements for a class action:
1. a class so numerous that joinder is impracticable ("numerosity"), and
2. joinder as parties one or more persons who are both members of the class and so situated as to provide adequate representation for absent class members ("adequate representation"), and
3. a common character among the rights of the class representatives and absent class members ("commonality"). McCastle, supra, 456 So.2d at 616.
I find that plaintiffs have made a prima facie showing of the likelihood of numerosity if we assume that among the 136 hourly employees working for PCS at the relevant time is a sufficient number of employees who have (1) worked more than eight hours in any one day and (2) not been paid overtime wages. Because of the flexibility afforded by La.C.C.P. art. 593.1(B) to convert the proceeding should that assumption prove incorrect, plaintiffs' showing is adequate at this stage of the proceedings for certification of the class.
I find that plaintiffs have made a prima facie showing of commonality under the particular facts of this case. In McCastle, Justice Dennis, speaking for the majority, made clear the considerations applicable in this state when making the commonality analysis. Common character requires not merely that questions of law or fact exist common to the class; the "common character" requirement restricts the class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Its object is to identify the cases where a class action promises important advantages of economy of effort and uniformity of result without undue dilution of procedural safeguards for members of the class or for the opposing party. It invites a close look at the case before it is accepted as a class action, *546 and even then requires that it be specially treated. McCastle, supra 456 So.2d at 616.
The McCastle court then defined the standard for determining when commonality exists, making a class action superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of the procedural device. These factors are:
1. effectuating substantive law;
2. judicial efficiency; and
3. individual fairness.
The court must inquire into the aspects of the case and decide whether these three intertwined goals would be better served by some other procedural device. McCastle, supra 456 So.2d at 616-617. After having arrived at an estimate of the class action's overall effectiveness in furthering the intertwined goals, the court must then compare this with its assessment of the effectiveness of other adjudicatory methods and decide whether the class action is the superior procedural device. In determining whether a class action in this case will promote enforcement of legislative policy, fairness and efficiency, the trial court must actively inquire into every aspect of the case and once a prima facie showing for class action treatment is made, must assume primary responsibility for directing the inquiry because of the effects its decision may have upon substantive law, absentees, and the court system. McCastle, supra 456 So.2d at 618.
The record below does not reflect that this commonality analysis was made by the trial court. Neither has the majority addressed the intertwined goals referred to in McCastle nor has it undertaken the balancing of those goals against the procedural rights of the potential class members. These issues go to the heart of the class action, and because I believe this is an important and helpful tool not only for case management, as the majority notes, but also for the protection and preservation of the substantive rights of parties both plaintiff and defendant, I concur on the basis of the results of the analysis required by the Louisiana Supreme Court in McCastle:

Effectuation of substantive policy
There are two principal ways in which the class action may serve this goal: to open courts to claims not ordinarily litigated, and to enable the court to see the full implications of recognizing the rights and remedies provided by La.R.S. 23:632, the only question still at issue among the parties. If it appears to the trial court, upon a review of the individual class members' claims, that they are insufficient to support, on an economically viable basis, individual litigation of each small claim, the class action will clearly be preferable to individual suits[6]. This would effectuate the public policy behind La.R.S. 23:632. See McCastle, supra, 456 So.2d at 619. If the claims are not asserted in a class action and are too small to warrant economically efficient individual prosecution, the legislative policy is advanced. Since recovery by the underpaid employees of penalties and attorneys fees is limited to the amount provided by statute as applied to the facts of this case, subject to PSC's presentation of defenses, there is little danger in this case that the legislative policy will be distorted by an exaggerated deterrent effect.

Judicial Efficiency
The common question of liability for penalties and attorneys' fees clearly preponderates over the essentially clerical mathematical calculation of specific underpayment to the class members. Each class member appears to stand in the same position as to the legal issues. The defenses at this point would seem to be identical for each member of the class.
With respect to identification of the members, it is not essential that every member be identified before certification. McCastle, supra, 456 So.2d at 620. This case does not appear, at this stage of the proceedings, to demonstrate problems of manageability that would be weighed against the benefits of unitary adjudication to determine whether the class action is superior. Should discovery reveal a need for more sophisticated procedural tools, the trial court may adopt a *547 management plan under La.C.C.P. art. 593.1(C).

Fairness to the parties
In determining whether it would be unfair to require separate adjudications, the courts should consider the precedential value of the first decision, the extent of injustice produced by inconsistent judgments in separate actions, and the size of the claims of absent members. McCastle, supra, 456 So.2d at 621. The first two factors in this case favor class action treatment of the claims. The present record is insufficient to provide a basis for determination of whether the size of the claims of the class representatives relative to the size of the claims of absent members will insure adequate prosecution by the representative plaintiffs.

DISCOVERY ISSUE
The discovery of the identities and wage records of the 136 potential class members is necessary not only to determine the amounts owed to each potential class member under the Louisiana Supreme Court's ruling in Apolinar v. Professional Const. Services, 95-0746 (La.11/27/95), 663 So.2d 17, but also to enable the trial court to define the class and to determine whether, in light of the facts that will be revealed in those records, the numerosity and commonality requirements of La.C.C.P. art. 591 are, in fact, met.
NOTES
[1] On May 21, 1996, a second amending petition was filed, adding three more named plaintiffs but raising no additional issues of law.
[2] The number 134 appears in the parties' briefs and oral arguments. However, this court's review of the printout shows that there are 136 employee numbers listed.
[3] In Phillips, it was determined that 32 people fell within the defined class; in O'Halleron, two separate classes were found to consist of 32 and 49 members, respectively.
[4] Although plaintiffs' counsel suggested that testimony would establish there were generally only 70 or 80 laborers working on this project for ten hours each day, four days each week, the trial court refused this offer of proof.
[5] At the May 17, 1996 hearing, defense counsel made it clear that PCS had offered to pay the actual wages due, but disputed the fact that anyone was entitled to anything more.
[6] This assumes that the trial court's review of the claims finds that the numerosity requirement is satisfied.