1 BYRNES, Judge.
Respondent, Alfredo Apolinar, was employed as a laborer by relator, Professional Construction Services, Inc., at the Seventeenth Street Canal, Westside Levee pursuant to a contract between the Board of Commissioners of the East Jefferson Levee District and Professional Construction Services, Inc. He alleges that he worked 52 forty hour weeks at an hourly rate of $9.00 per hour. Apolinar does not allege that he ever worked over 40 hours per week. However, he claims 10 hours of overtime per week at time and one half, or $13.50 per hour.
Apolinar bases his claim on paragraph 1.43 of the Levee Board bid specifications which provides that workers shall receive overtime pay when they work “in excess of eight hours in any calendar day or in excess of forty hours in any work week, whichever is the greatest number of overtime hours.” [Emphasis added.] Apolinar worked ten hours a day, four days a week.
Apolinar argues that this constitutes a stipulation pour autrui citing: Andrepont v. Acadia Drilling Co., 231 So.2d 347, 350 (La.1969); Dartez v. Dixon, 502 So.2d 1063 (La.1987); Succession of Killingsworth, 292 So.2d 536, 542 (La.1973); Whitney Nat. Bank v. Howard Weil Financial Corp., 93-15682 (La.App. 4 Cir. 1/27/94), 631 So.2d 1308, 1310-11; and United Gas Pipe Line Co. v. Cargill, Inc., 612 So.2d 783, 786 (La.App. 1 Cir.1992).
None of these cases cited by respondent involve a public entity and none involve a stipulation that is against public policy.
The case before us may be distinguished on both of these factors. In the instant case we are dealing with a public entity, the Levee Board. The contract in question was subject to public bid laws. We are dealing with a bid requirement that is against public policy. “Unquestionably, local political subdivisions are not authorized to determine bidder responsibility in terms of social awareness without specific statutory authorization from the legislature.” Louisiana Associated General Contractors v. Calcasieu, 586 So.2d 1354, 1368 (La.1991). There is no essential or necessary connection between the hourly wages paid by a contractor and the intrinsic quality and character of the work done. Cal-casieu at 1365.
Respondent misreads Calcasieu. Calca-sieu did not prohibit contractors from paying prevailing wages if they so chose. It prohibited public entities from requiring contractors to pay prevailing wages because as stated above, there was no essential or necessary connection between the hourly wages paid by a contractor and the intrinsic quality and character of the work done. Therefore, the rationale of Calcasieu is not limited to prevailing wage situations. Likewise, the overtime clause in this case has no essential or necessary connection to the intrinsic quality and character of the work done. If it were the practice of Professional Construction Services, Inc. to voluntary pay its employees overtime in the manner called for in the Levee Board bid specification, it is free to do so. However, the Levee Board is not authorized to impose such a requirement.
There is no allegation that relator violated laws regarding overtime. It might be argued that the quality of work suffers because of fatigue when a | -¡worker works too many hours, e.g., laws limiting shifts for truckers and airline pilots. The bid specification in this case does not limit worker hours and can lay no claim to quality control in that regard. It might be argued that it is in the interest of society to protect workers who are not in a supervisory capacity from exploitation by requiring that they receive increased compensation for working what society has determined are excessive hours, e.g., our overtime laws. However, it is not within the authority of the Levee Board to make such societal determinations in public bid contracts where they have already been determined by society through the legislative process. Calca-sieu at 1368.
There is no genuine issue of material fact. The bid specification speaks for itself. This is a case where the reversal of the judgment will terminate the litigation as to the relator. Under these circumstances, although a court of appeal generally will not exercise its su *1241 pervisory jurisdiction to review the denial of a motion for summary judgment, judicial efficiency and fundamental fairness dictate that the merits of the application for writs be decided. Casnave v. Dixie Building Material Company, Inc., 490 So.2d 381, 382 (La.App. 4 Cir.1986); Moreau v. Moran, 465 So.2d 202, 205 (La.App. 3 Cir.1985). See also Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
For the foregoing reasons, we grant relator’s application for writs; we reverse the judgment of the trial court and render judgment dismissing respondent’s claims against relator.

JUDGEMENT REVERSED AND RENDERED.