| ARMSTRONG, Judge.
In this case, the plaintiffs, disappointed bidders on a public construction contract, allege that the contract was illegally awarded to another bidder. The disposi-tive facts were stipulated to by the parties and the trial court, deciding the case without a jury, found that the contract was not awarded illegally and so dismissed the plaintiffs action. The plaintiffs appeal. The plaintiffs rely upon one of the public *35 bid statutes. Although the plaintiffs advance credible legal theories in support of their arguments, the statute in question is quite narrowly drawn, and we do not think that the statute can be interpreted so as to apply to the facts of this case. Therefore, we must affirm.
The Louisiana Stadium and Exposition District (“LSED”) advertised for bids a construction contract for certain renovations to the Louisiana Superdome. The apparent low bid was by Carl E. Woodward, Inc. (“Woodward”) and the second lowest bid was by a joint venture of plaintiffs Stallings Construction Company, Inc. and The Lemoine Company, Inc. (“Stall-ings/Lemoine”). Stallings/Lemoine protested Woodward’s bid but the LSED awarded the contract to Woodward. Stall-ings/Lemoine then brought the present action which, after a number of proceedings not directly relevant to this appeal, was dismissed by the trial court.
| ¿The basis of Stallings/Lemoine’s action is La. R.S. 38:2190, which states:
A. Architects and engineers are prohibited from owning a substantial financial interest, either directly or indirectly, in any corporation, firm, partnership, or other organization which supplies materials for the construction of a public work when the architect or engineer has performed architectural or engineering services, either directly or indirectly, in connection with the public work for which the materials are being supplied.
B. For the purposes of this Section, a “substantial financial interest” shall exclude any interest in stock being traded on the American Stock Exchange or the New York Stock Exchange.
C. Whoever violates the provisions of Subsection A, shall be guilty of a misdemeanor and shall be fined not more than an amount equal to the total value of the materials involved in the violation of Subsection A of this Section, or not more than ten thousand dollars, whichever is greater, or imprisoned for not more than six months, or both.
Apparently, in order to ensure compliance with this statute, LSED required that the successful bidder (in this case, Woodward) execute an affidavit referencing La. R.S. 38:2190 and stating in pertinent part:
Part II
La. R.S. 38:2190
That the architect or engineer, or representative thereof, does not own a substantial financial interest, either directly or indirectly, in any corporation, firm, partnership, or other organization which supplies materials for the construction of a public or [sic] project when the architect or engineer has performed architectural or engineering services, either directly or indirectly, in connection with the public building or project for the public building or project for which the materials are being supplied.
Stallings/Lemoine alleges that the required affidavit could not be truthfully executed by Woodward because Paul Flower, who was the owner of Woodward, |swas also part owner, Treasurer and a Director of Case Design Group, Inc. (“Case Design”) and Case Design had done architectural work for the project at issue. Under Stallings/Lemoine’s legal theory, Paul Flower was a “representative” of Case Design and Woodward, as the general contractor for the project, “supplied materials” for the project.[1] Also, Stall-ings/Lemoine relies upon the fact that Woodward, under a subcontract with Case Design, had performed engineering services for the project at issue. Thus, it is also Stallings/Lemoine’s legal theory that Woodward “indirectly” performed engineering services for the project and also, *36 as the general contractor for the project, “supplied materials” for the project.
We do not address the questions of whether Paul Flower is a “representative” of Case Design or whether Woodward “indirectly” performed engineering services for the project at issue because it is clear that, at least under the factual circumstances of this case, Woodward did not “supply materials” for the project. The original bid documents called for the general contractor to provide materials for the project. However, an addendum to the bid documents provided a change in procedure so that a construction manager, acting as the owner’s (LSED) representative, would issue purchase orders to various material suppliers and that those material suppliers would be paid directly by the LSED. This procedure was adopted so that LSED would avoid the cost of sales taxes on materials for the project.
| ¿Thus, the general contractor, Woodward as it turned out, would not be involved in the purchase of or payment for materials. Most importantly, Woodward, not being involved in the purchases or sales of the materials, would not be in a position to either gain an advantage over other bidders because of its ability to best supply some particular material or to profit by supplying material.
Stallings/Lemoine’s brief argument that Woodward “supplied materials” to the project is based solely on the original bid documents’ provision for the general contractor to provide materials for the project. Stallings/Lemoine asserts that the procedure adopted whereby the LSFD would purchase the materials directly from the various suppliers does not eliminate the obligation of the general contractor, Woodward, to provide materials for the project. Yet, that is precisely what was done by the procedure adopted pursuant to the addendum to the bid documents. Under the tax-savings procedures adopted pursuant to that addendum, the general contractor no longer had any obligation to provide materials for the project. Thus, we find that it is quite impossible to conclude that Woodward “supplied materials” for the project.
Further, the Attorney General has issued two opinions, Nos. 80-1804 and 80-1592, to the effect that the purpose of the statute in question, La. R.S. 38:2190, is to prevent architects and engineers who are involved in drafting specifications from drafting the specifications so as to favor a materials supplier firm in which the architect or engineer has a substantial financial interest. We agree with the general thrust of those Attorney General opinions. The statute, so interpreted, ^serves the dual purposes of the public bid laws under which are to (1) eliminate fraud and favoritism and (2) secure free and unrestricted competition among bidders, thereby avoiding undue or excessive costs. See Apolinar v. Professional Construction Services, 95-0746 (La.11/27/95), 663 So.2d 17, 19; New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223 (La.4/10/95), 653 So.2d 538, 545. We do not believe there has been a violation of the statute in this case because the statute refers only to firms which supply materials, and does not mention firms which act only as contractors such as Woodward in the present case.[2]
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. Implicit in Stallings/Lemome’s legal theory is the assumption that Paul Flower, as the sole owner of Woodward, “supplied materials” for the project.

. In denying a Stallings/Lemoine motion for preliminary injunction, the trial court held that the statute can have no application to contractors. We need not address whether the statute can ever apply to contractors under any circumstances. We decide only that, under the facts of this case, in which the materials were purchased directly by LSED, the statute is not applicable to Woodward.