PAUL A. BONIN, Judge.
| Wallace C. Drennan, Inc., a contracting firm, was the lowest responsible, and thus the successful, bidder on two public-works projects advertised by the City of New Orleans. Because the City failed to execute contracts within the statutory deadlines of forty-five days from the awarding of the bids to Drennan and thereafter of thirty days from that date to issue notices to proceed, Drennan sued the City for damages due to the delay occasioned by the City’s tardiness.[1] The City replied that the statutory deadlines did not apply because Drennan had been given the requisite notice of the inapplicability of the deadlines in its official bid advertisements.
Drennan moved for partial summary judgment. See La. C.C.P. ART. 966 E. Drennan’s motion sought a judgment in its favor on liability alone, reserving for trial the issue of damages.[2] The trial court rendered a partial judgment in Drennan’s favor on the issue of liability alone, and designated the judgment as 12final and immediately appealable.[3] See La. C.C.P. Art. 1915 B(l). The City devolutively appeals the partial summary judgment in Dren-nan’s favor.[4] See La. C.C.P. Art. 1911.
“Appellate courts review summary judgments de novo under the same criteria *707 that govern the district court’s consideration of whether summary judgment is appropriate.” Duncan v. U.S.A.A. Ins. Co., 06-0363, pp. 3-4 (La.11/29/06), 950 So.2d 544, 547. “[A] motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. Art. 966 C(l). After our de novo review of the partial summary judgment, we conclude that Drennan is entitled as a matter of law to a judgment finding the City liable on the claim for damages due to delay. Accordingly, we affirm the partial summary judgment and remand the case for a trial on damages. We explain our conclusion in greater detail below.
I
In this Part we discuss the historical facts necessary to an understanding of our substantive decision.
| sIn late 2001 the City advertised for bids under the provisions of the Louisiana Public Bid Law for street and utility renovation to certain streets. Drennan was the lowest responsible bidder on two of the projects: Touro[5] and Prytania[6]. Only after delays of over seven months on the Touro project, and over nine months on the Prytania project, did Drennan receive a Notice to Proceed and begin work.
The published advertisements appeared in the The Times-Picayune for the Touro project on October 23, 30, and November 6, 2001, and for the Prytania project on October 30, November 6, and November 13, 2001. The published notices stated that the projects were expected to be partially funded by a grant from the United States Environmental Protection Agency with matching funds from the New Orleans Sewerage and Water Board. On February 26, 2002, the City informed Drennan that it was the lowest responsible bidder for both projects.
But the City and Drennan did not sign a contract for the Touro project until April 12, 2002. At that time no contract was signed for the Prytania project. Then, on April 19, 2002, the Sewerage and Water Board notified the City that it did not approve the projects and withheld its matching funds.
On July 1, 2002, Drennan filed a petition for mandamus against the City. Following the filing, on August 1, 2002, the City issued a Notice to Proceed on the Touro project. Also, a contract for the Prytania project was signed on August 13, 2002; the City issued the Notice to Proceed for the Prytania project on September 30, 2002, and the street repairs began.
II
At the outset of our discussion, we note that Drennan’s cause of action is implied in the Public Bid Law:
Any provision contained in a public contract which purports to waive, release, or extinguish the rights of a contractor to recover cost of damages, or obtain equitable adjustment, for delays in 'performing such contract, if delay is *708 caused in whole, or in part, by acts or omissions within the control of the contracting public entity or persons acting on behalf thereof, is against public policy and is void or unenforceable. When a contract contains a provision which is void and unenforceable under this Subsection, that provision shall be severed from the other provisions of the contract and the fact that the provision is void and unenforceable shall not affect the other provisions of the contract.
La. R.S. 88:2216 H (emphasis added).
Drennan alleges that it sustained damages due to the failure of the City to perform its obligations under the Public Bid Law within the time requirements of § 38:2215. A political subdivision, like the City, “upon receipt of bids for the undertaking of any public works contract shall act within forty-five calendar days of such receipt to award said contract to the lowest responsible bidder or reject all bids.” [7] La. R.S. 38:2215 A. “Upon the execution of the contract, the public entity, within thirty days thereafter, shall issue to the contractor a notice to proceed with the project.”[8] La. R.S. 38:2215 C. “These provisions shall not be subject to waiver.” La. R.S. 38:2215 D. There is no factual dispute that the City did not perform by these deadlines with respect to either project.
|fiThe City, however, points out that these deadlines do not apply under circumstances which are specified for in the same statute, which also provides:
The [time limit] provisions of this Section shall not be applicable when the contract is to be financed by bonds which are required to be sold after receipt of bids on the contract, or when the contract is to be financed in whole or in part by federal or other funds which will not be readily available at the time bids are received, or on contracts which require a poll of the legislature of Louisiana before funds are available to fund the contract. In the event the time limit stipulated herein is not applicable because of one of the exceptions outlined above, this fact shall be mentioned in the specifications for the project and in the official advertisement for bids required in accordance with R.S. 38:2212.
La. R.S. 38:2215 B. This provision, too, is not subject to waiver. See La. R.S. 38:2215 D.
Specifically, the City argues that, because these street repair contracts were “to be financed in whole or in part by federal or other funds which will not be readily available at the time bids are received,” the 45-day contract and the 30-day notice to proceed deadlines are rendered inapplicable and, consequently, it further argues in its defense, the City is not liable to Drennan for any so-called delay. La. R.S. 38:2215 B.
Importantly, however, the City agrees that unless notice of the inapplicability of the statutory deadlines has been given to the bidders in the official advertisements, the deadlines would apply after all: “In the event the time limit stipulated herein is not applicable because of one of the exceptions outlined above, this fact shall be mentioned in the specifications for the pro *709 ject and in the official advertisement for bids required in accordance with R.S. 88:2212.” Id. (emphasis added). We emphasized the mandatory aspect of mentioning an | (¡exception provided in § 38:2215 B to the time limits set out § 38:2215 A in the official advertisements in Upper Pontalba Bldg. Restoration Corp. v. Pete Vicari General Contractor, 00-2103, pp. 7-9 (La.App. 4 Cir. 6/27/01), 790 So.2d 130, 135-136. There the City -in its project manual noted that bids were being sought to use as a final cost estimate to obtain financing and, if no financing comes forth, “the City is not liable to any bidder.” Id., 00-2103 at p. 3, 790 So.2d at 133. But this bare information was not contained in the official advertisements in The Times-Picayune. Because the City failed to mention the financing condition in the official advertisements, we concluded that the City failed to prove the applicability of any exception provided in § 38:2215 B. Id., 00-2103 at pp. 8-9, 790 So.2d at 135-136. Moreover, the City “may not treat substantive requirements of the Bid Law, the advertisement for bids and the bid forms as mere informalities.” Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, 00-1146, p. 7 (La.App. 4 Cir. 10/3/01), 798 So.2d 1167, 1173 (emphasis added).
Thus, the City concedes that our decision in Upper Pontalba is authoritative for the proposition that the official advertisements must contain an explicit statement regarding any applicable exception under § 38:2215 B.
There is no factual dispute about the content of the City’s official advertisements, which read:
Any contract or contracts awarded for sewer related work identified in this Advertisement are expected to be funded in part by a grant from the United States Environmental Protection Agency with matching funds from the Sewerage and Water Board of New Orleans. Neither the United States nor any of its departments, agencies or employees is or will be a party to this Advertising or any resulting contract. Procurement will be subject to regulations contained in 40 CFR part 31, |7including the requirements of the EPA Supplemental Conditions, 40 CFE 31.36(e), “Contracting with small and minority firms, women’s business enterprises, and labor area firms.” (emphasis added)
Thus, we are called upon to decide only whether the content of the foregoing advertisement satisfies the requirement of § 38:2212 B that “[i]n the event the time limit stipulated herein is not applicable because of one of the exceptions outlined above, this fact shall be mentioned,” to which task we turn in the following Part.
Ill
From our consideration of all of the provisions of § 38:2212, we conclude that the content of the City’s advertisements did not satisfy the requirements of the statute and that the deadlines do apply. The interpretation of a statute is a matter of law. Red Stick Studio Development, L.L.C. v. State, Department of Economic Development, 10-0193, p. 5 (La.1/19/11), 56 So.3d 181, 185. “Words and phrases shall be read with their context and shall be construed according to common and approved usage of the language .... The word ‘shall’ is mandatory and the word ‘may’ is permissive.” LA. R.S. 1:3. “When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” LA. R.S. 1:4. See also La. Civil Code Art. 9; Red Stick, 10-0193 at p. 5, 56 So.3d at 185; New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223, p. 11 (La.4/10/95), 653 So.2d 538, 544.
*710 The City argues that “[a]ny contract or contracts awarded for sewer related work identified in this Advertisement are expected to be funded in part by a grant from the United States Environmental Protection Agency with matching funds | sfrom the Sewerage and Water Board of New Orleans” is mention of a particular fact (“to be financed in whole or in part by federal or other funds which will not be readily available at the time bids are received”) necessary to trigger the exception. We disagree for two reasons.
First, we too understand that the information in the official advertisements provides part of the required information; these projects may be financed in whole or in part by federal (that is, the EPA) or other (that is, the Sewerage and Water Board), funds. But there is nothing which compels the bidder to understand that the City’s “expectation” [9] of the sources of the funding means that the funding “will not be readily available at the times the bids are received.” Indeed, it is worth noting that as a matter of undisputed fact, the matching funds of the EPA were always available and, when the Sewerage and Water Board balked at contributing to the funding of the projects, the City expended its own available funds. Thus, as the trial judge commented, the language of the advertisement “merely informs bidders of technical issues related to the possible use of federal funds.”
The more important reason, however, for our disagreement with the City is the failure of the City’s advertisements to mention the fact that the time limitations (or statutory deadlines) do not apply. There is nothing explicit in the official advertisements mentioning that the funding will not be available at the times the bids are received. And, critically, there is nothing in the advertisements informing [9the bidders that the time limits of § 38:2215 A (forty-five days from receipt of bids to award of contract and thirty days from contract to notice to proceed) are not applicable:
In the event the time limit stipulated herein is not applicable because of one of the exceptions outlined above, this fact shall be mentioned in the specifications for the project and in the official advertisement for bids required in accordance with R.S. 38:2212.
La. R.S. 38:2215 B (emphasis added). The “fact” to be mentioned is that the “time limit herein is not applicable.” As we have already stated, the non-City source of the funds is not the “fact” which must be mentioned. Also, mere “unavailability” of funds at the time of the receipt of bids is not the “fact” which must be mentioned. If the City did not have available funds sufficient for the projects, it could have rejected all of the bids for “just cause.” See La. R.S. 38:2214 B(l). But even the rejection of bids for just cause must be accomplished within the non-waivable time limitations of La. R.S. 38:2212 A. See Rosenbush, 94-2223 at p. 15, 653 So.2d at 546.
Therefore, we find that it is the inapplicability of the time limitations which is the “fact” which must be mentioned in the official advertisements. And we further *711 find that the City’s advertisements did not mention that fact.
IV
The City alternatively argues that Drennan “waived” any complaint about the imprecision of its notice. On this point, too, we disagree.
hnln support of its contention that Dren-nan “waived” any right to protest the terms of the advertisement, The City points us to the Supreme Court’s decision in Apolinar v. Professional Const. Services, 95-0746 (La.11/27/95), 663 So.2d 17. We will be brief on this point because, as we have observed above, the provisions for both the time limits and the advertisement requirements of § 38:2215 “shall not be subject to waiver.” La. R.S. 38:2215 D.
Apolinar is inapplicable to the issues under consideration. The contractor, who was the successful bidder and was awarded the public contract, had not challenged a bid requirement that the winning bidder pay overtime wages to its employees. The contractor did not comply with that requirement and was later sued by an employee for the overtime pay. The Louisiana Supreme Court on those facts held that the contractor waived any challenge to the bid specifications because it “did not qualify its bid or in any manner object to the provision prior to the time of bidding. Nor did [the contractor] file a declaratory judgment action to have this term of the bid specifications declared invalid.” Apoli-nar, 95-0747, pp. 4-5, 663 So.2d at 19.
In our case, there is no bid requirement for Drennan to have challenged. So there is no challenge which was “waived.” And, most importantly, neither Drennan nor the City could have waived the provisions of § 38:2215. The Public Bid Law is a prohibitory law founded on public policy, and the City has no authority to take any action which is inconsistent with it. See Broadmoor, L.L.C. v. Ernest N. Mortal New Orleans Exhibition Hall Authority, 04-0211, p. 6 (La.3/18/04), 867 So.2d 651, 656.
JnV
We conclude that partial summary judgment in favor of Drennan on the issue of liability is appropriate. The City’s advertisement for bids for these public works contracts did not mention the fact that the statutorily-mandated time limitations did not apply to these contracts. Because the City failed to establish that the time limits did not apply and that its advertisement mentioned that fact, and it did not reject all bids for just cause or extend the deadline by mutual consent with Drennan, the lowest responsible bidder, it had forty-five days to award the contract to Drennan. See Rosenbush, 94-2223 at p. 15, 653 So.2d at 546; see also n. 7, ante. The City’s failure renders it liable for Drennan’s damages.
REMAND INSTRUCTIONS
Having decided that the City is liable to Drennan for damages occasioned by the delay in executing the contracts and issuing the notices to proceed on the Touro and Prytania street and utility repair projects, we remand this matter to the district court for a trial limited to the assessment and award of damages due to Drennan by the City. At the limited trial, the City, of course, is entitled to offer proof of its affirmative defense that Drennan’s damages be reduced for its alleged failure to make reasonable efforts to mitigate its damages due to the City’s failure to timely perform its obligations. See La. Civil Code Art. 2002.
We also remand this matter to the district court for a trial for a determination of the City’s liability for damages, and if ap *712 propriate, the amount thereof, on 112Prennan’s claim for reimbursement. (This is the unrelated issue which we have not adjudicated on this appeal.)
DECREE
We affirm the partial summary judgment dated April 27, 2010, in favor of Wallace C. Drennan, Inc., determining that the City of New Orleans is liable to it for damages due to its delay in executing the contracts and issuing the notices to proceed on the Touro and Prytania street and utility repair projects. We remand to the district court for further proceedings to determine the amount of delay damages due to Wallace C. Drennan, Inc., by the City of New Orleans, and to adjudicate Drennan’s claim against the city for additional compensation for work performed on the Touro and Prytania projects.
AFFIRMED AND REMANDED
ARMSTRONG, C.J., concurs in the result.
BAGNERIS, J., concurs.

. Drennan's suit also includes a distinct claim for $91,979.00 for reimbursement for additional work performed on the projects but not included within the contracts. This additional claim was not adjudicated in the district court and is not subject to this appeal.

. The City also filed its own motion for summary judgment in which it sought dismissal of the Drennan’s claims for damages due to the delay. The trial court denied the City's motion.

. Because the trial court did not provide express reasons for its designation, we issued a show cause order to the parties why the appeal should not be dismissed. See R.J. Messinger, Inc. v. Rosenblum, 94-1664, p. 3 (La.3/2/05), 894 So.2d 1113, 1116 (trial judge "should give explicit reasons on the records to why there is no just reason for delay; mere conclusory statements do not suffice”). In their response to our rule, the parties evaluated the Messinger factors. Messinger, 04-1664 at p. 7, n. 5, 894 So,2d at 1118, n. 5; see Guillory v. Progressive Security Ins., 10-0428 (La.5/21/10), 36 So.3d 219. Upon our de novo review, we are satisfied that there is no just reason for delay in obtaining immediate appellate review of the judgment, which is our overriding consideration, and that there is a sufficient basis for the trial court's certification. See Touro Infirmary v. Sizeler Architects, 04-0634, p. 4 (La.App.3/23/05), 900 So.2d 200, 203. Thus, this is a final judgment in which an appeal is given by law. See La. C.C.P. Art. 2083 A.

.The City neither sought supervisory review of the denial of its own motion for summary judgment nor assigned as error in this appeal the denial of its motion. See Rule 1-3, Uniform Rules — Courts of Appeal. The denial of a motion for summary judgment is an interlocutory judgment. See La. C.C.P. Art. 968 ("An appeal does not lie from the court's refusal to render any judgment on the pleading or summary judgment.”) But it is well-settled that although an interlocutory judgment may not itself be immediately appeal-able, it is nevertheless subject to review by an appellate court when a judgment is rendered in the case which is appealable. People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752 (1968); La.C.C.P. Art. 1915 *707 B(2); see also, e.g., Phillips v. Gibbs, 10-0175, p. 4 (La.App. 4 Cir. 5/21/10), 39 So.3d 795, 798. "When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment.” Roger A Stet-ter, Louisiana Civil Appellate Procedure, § 3:32 (2010-2011 ed.).

. The repairs, designated as Project No. 95-14-01C, extended from St. Claude Avenue to North Claiborne Avenue.

. The repairs, designated as Project No. 95-8(96A & B), extended from Jefferson Avenue to Napoleon Avenue.

. While these deadlines are not subject to waiver, "the public entity and the lowest responsible bidder, by mutually written consent, may agree to extend the deadline for award by one or more extensions of thirty calendar days.” See § 38:2215 A. There were no such extensions in this case.

. The notice to proceed may also be extended "upon mutual consent by both parties.” La. R.S. 38:2215 C. There was no such extension.

. New Oxford English American Dictionary, 3d ed. (2010), 609, defines "expect” as "regard something as likely to happen,” "believe that something or someone will arrive soon,” "look for something from someone as rightfully due or requisite in the circumstances,” or informally, "used to indicate that one supposes something to be so but has no firm evidence or knowledge: from Latin exspec-tare, 'look out for.' ” (This dictionary has been cited approvingly in La. Bag. Co., Inc. v. Audubon Indem.Co., 08-0453, p. 13 (La. 12/2/08), 999 So.2d 1104, 1114, and Reed v. State Farm Auto.Ins. Co., 03-0107, p. 13 n. 7 (La. 10/21/03), 857 So.2d 1012, 1020-1021 n. 7.)