JUDGE SANDRA CABRINA JENKINS
This is a public bid dispute. When the City of New Orleans (the "City") learned that it had issued identical flawed invitations to bid on two public road-paving projects, the City decided to reject all of the bids and to re-advertise the projects. One of the bidders, Command Construction Industries, L.L.C. ("Command"), filed two lawsuits seeking to enjoin the City from rebidding the projects and to force the City to award the projects to Command. After the suits were consolidated, the trial court rendered a March 15, 2017 judgment granting a preliminary injunction in favor of Command on one project, and denying injunctive relief to Command on the other project. The judgment also denied Command's requests for writs of mandamus on both projects. Both the City and Command appealed. For the reasons that follow, we *1019 affirm in part, reverse in part, and remand.
FACTUAL AND PROCEDURAL BACKGROUND
The Projects
Pursuant to the Louisiana Public Bid Law, on July 31, 2015, the City issued an Invitation to Bid on a public work for the paving of streets in the Gentilly Terrace and Desire area neighborhoods of New Orleans (the "Gentilly Project"). The Invitation to Bid stated that each bidder was "required" to submit a Louisiana Contractors License Number with two specific classifications: (1) "Public Works Construction"; and (2) "Highway, Street & Bridge Construction."
On August 14, 2015, the City issued another Invitation to Bid for the paving of streets in the Treme and Laffite neighborhoods of New Orleans (the "Treme Project"). Like the Gentilly Project, the Invitation to Bid on the Treme Project required contractor licenses in "Public Works Construction" and "Highway, Street & Bridge Construction."
On September 10, 2015, the City opened the bids for the Gentilly Project; and on September 22, 2015, the City informed Roubion Roads & Streets, LLC ("Roubion") that it was the lowest bidder and that the City intended to award the contract to Roubion.
On October 2, 2015, Command, which was the second-lowest bidder on the Gentilly Project, protested the City's plan to award the contract to Roubion. Command complained that Roubion was a non-responsive bidder because it did not meet the licensing requirements for the contract, in that Roubion only had a license classification for "Highway, Streets & Bridge Construction," and not for "Public Works Construction," as required by the bid documents.
The City opened the bids on the Treme Project on September 15, 2015. On October 6, 2015, the City sent a letter to Command advising that the City intended to award the Treme Project to Command, subject to the receipt and approval of post-bid documentation and the execution of a formal contract with the City.
On October 7, 2015, Roubion responded to Command's bid protest on the Gentilly Project. Roubion advised the City that, although the Invitation to Bid required a license for "Public Works Construction," there was no such classification recognized by the Louisiana Licensing Board of Contractors. Roubion told the City that Roubion was the lowest responsive and responsible bidder on the Gentilly Project because the only "true" license requirement in the Invitation to Bid was the classification "Highway, Street & Bridge Construction," which Roubion held.
On October 16, 2015, the City advised Command that the City had determined that there was just cause for rejection of all bids on the two projects because "no bidder ha[d] the nonexistent contractor license classification as per the instructions on the Invitation to Bid."
On October 16, 2015, Command filed two separate "Verified Petitions for Preliminary Injunction, Writ of Mandamus, and Permanent Injunction, or in the Alternative, for Damages" (collectively, the "Petitions"). In the Petitions, Command sought to enjoin the City from rebidding both the Gentilly and the Treme Projects, and requested writs of mandamus to compel the City to award the two contracts to Command. The two lawsuits were consolidated.
A hearing was held on November 5, 2015. On March 17, 2017, the trial court rendered a judgment:
(1) denying Command's Petition for Preliminary Injunction with respect to the Gentilly Project;
*1020 (2) granting Command's Petition for Preliminary Injunction with respect to the Treme Project;
(3) denying Command's Petition for Writ of Mandamus with respect to the Gentilly Project; and
(4) denying Command's Petition for Writ of Mandamus with respect to the Treme Project.
The trial court found that, on the Gentilly Project, the City had "just cause" to reject all bids "due to the City's flawed bidding process." On the Treme Project, however, the trial court found that Command was the "lowest responsive and responsible bidder," and should be awarded the contract.
On April 18, 2017, Command filed an "Ex Parte and Unopposed Motion to Make Preliminary Injunction Permanent."[1] On that same date, the trial court issued an order making permanent the March 15, 2007 judgment in favor of Command with respect to the Treme Project only.
The City appeals that portion of the March 15, 2017 judgment granting Command's request for a preliminary injunction on the Treme Project, and the April 18, 2017 order making that portion of the judgment permanent. Command appeals that portion of the March 15, 2017 judgment denying Command's request for a preliminary injunction on the Gentilly Project, and denying Command's requests for a writ of mandamus on both the Gentilly and Treme Projects.
DISCUSSION
Standard of Review
"A trial court has broad discretion in the granting or denial of a preliminary injunction, and will not be disturbed on review absent clear abuse of that discretion." Yokum v. Pat O'Brien's Bar, Inc. , 12-0217, p. 6 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80 (quotations and internal citations omitted). A trial court's denial of a writ of mandamus is also reviewed under an abuse of discretion standard. Constr. Diva, L.L.C. v. New Orleans Aviation Bd. , 16-0566, p. 13 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1037, writ denied , 17-0083 (La. 2/24/17), 216 So.3d 59. This court reviews legal issues using the de novo standard of review. A.P.E., Inc. v. City of New Orleans , 13-1091, p. 7 (La. App. 4 Cir. 1/15/14), 132 So.3d 475, 480.
The Louisiana Public Bid Law
The Louisiana Public Bid Law, La. R.S. 38:2211, et seq. , governs the manner by which all contracts for public works are to be awarded. Dynamic Constructors, L.L.C. v. Plaquemines Parish Gov't , 15-0271, p. 5 (La. App. 4 Cir. 8/26/15), 173 So.3d 1239, 1243. The Public Bid Law was enacted in the interest of the taxpaying citizens to protect against favoritism in contracting by public officials resulting in exorbitant and extortionate prices. Id. As such, it is a " 'prohibitory law founded on public policy,' " and must be strictly construed. Id. (quotations and internal citations omitted).
In the Public Bid Law, the legislature has specifically prescribed the conditions upon which the State will permit public work to be done on its behalf or on behalf of its public subdivisions. Id. A political entity, therefore, has no authority to take any action which is inconsistent with *1021 the Public Bid Law. Id. , 15-0271, p. 6, 173 So.3d at 1243.
Louisiana's Public Bid Law provides that all public work contracts "shall be advertised and let by contract to the lowest responsible and responsive bidder who has bid according to the bidding documents as advertised, and no such public work shall be done except as provided in this Part." La. R.S. 38:2212(A)(1)(a). The term "bidding documents" is statutorily defined as "the bid notice, plans and specifications, bid form, bidding instructions, addenda, special provisions, and all other written instruments prepared by or on behalf of a public entity for use by prospective bidders on a public contract." La. R.S. 38:2211(A)(2).
"[W]hen a public entity elects to place certain requirements in its advertisement for bids and on its bid forms, that entity is bound by those requirements and may not choose to waive them at a later date." Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth. , 04-0211, 04-0212, p. 8 (La. 3/18/04), 867 So.2d 651, 657 ; La. R.S. 38:2212(B)(1). "The public entity does not have the discretion to determine, after bids have been submitted, whether a requirement is substantive or non-substantive, waivable or non-waivable. Once the public entity establishes a requirement, that requirement must be uniformly followed by all bidders." Hamp's Constr., L.L.C. v. City of New Orleans , 05-0489, pp. 10-11 (La. 2/22/06), 924 So.2d 104, 111. Thus, "irregularities in bid forms, even if informal or seemingly inconsequential, may not be discounted and set aside." Command Constr. Indus., L.L.C. v. City of New Orleans , 13-0524, 13-0525, p. 8 (La. App. 4 Cir. 10/23/13), 126 So.3d 716, 720.
The City's Alleged Waiver
Command asserts two waiver arguments, First, Command contends that the City waived its right to reject all bids by accepting Command's bid on the Treme Project. Second, Command argues that the City waived any objection to the erroneous licensing requirements in the Invitations to Bid because it did not raise this objection prior to the deadline for submitting bids.
Wallace C. Drennan, Inc. v. Sewerage & Water Board of New Orleans
In arguing that the City waived its right to reject all bids on the Treme Project, Command relies on this Court's statement in Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans , 00-1146 (La. App. 4 Cir. 10/3/01), 798 So.2d 1167, that "[o]nce the public entity has exercised its option and accepted a lowest responsible bid, it cannot reject all bids and re-advertise the project." Id. , 00-1146, p. 14, 798 So.2d at 1177.
Here, we do not find that the City accepted Command's bid on the Treme Project. Although the City's October 6, 2015 letter to Command acknowledged the City's "intent to award" the Treme Project to Command, the letter also stated that it was "not to be construed as a contract award notification ." (Emphasis added.) The letter further stated that a "separate contract [would] be made after the satisfactory review and approval of all post-bid information."
The Invitation to Bid also states that an award is to be made after post-bid investigation and documentation:
AWARD : It may require additional information from bidders and conduct inquiries to determine the bidder's responsibility or the accuracy of the furnished information. Subject to merit-based cancellation and confirmed city funding, the City will award the procurement to the responsible bidder that submitted the lowest responsive (including bid and post-bid requirements) bid.
*1022 We find no merit in Command's argument that the City waived its right to reject all bids by accepting Command's bid on the Treme Project.
Apolinar v. Professional Constructive Services
Command relies on Apolinar v. Prof'l Constr. Servs. , 95-0746 (La. 11/27/95), 663 So.2d 17, for its argument that the City waived its objection to the faulty licensing requirements in the Invitations to Bid because it did not object before submission of the bids. In Apolinar , the Supreme Court concluded that a successful bidder on a public works project, who did not object to an overtime provision in the specification for bids, waived any objection to the validity of the overtime provision, and must comply with the terms of its bid by paying overtime wages. Id. , 95-0746, p. 1, 663 So.2d at 17. The Court reasoned that it was "necessary for a bidder to protest timely any objectional provision in bid specifications in order to allow the public body an opportunity to correct or clarify the specifications at a time when correction or clarification will be meaningful to all bidders." Id. , 95-0746, p. 5, 663 So.2d at 19 (emphasis added).
Apolinar's waiver doctrine plainly applies only to bidders. This argument is also without merit.
La. R.S. 37:2163(D)
Command asserts that the City waived its objection to the flawed licensing classification in its Invitations to Bid by not following the procedure set forth in La. R.S. 37:2163(D), which provides:
It shall be the obligation of the architect, engineer, or awarding authority to classify public projects. Once the project is classified, any interested person may object by sending a certified letter to both the board and to the architect, engineer, or awarding authority. Said objection shall be received by the board and by the architect, engineer, or awarding authority at least ten working days prior to the date on which bids are to be opened. The objection shall be submitted to a committee for determination. The chairman of the board shall appoint the committee which shall consist of board members. The committee shall have the power to approve the project classification or add an additional classification by vote of a majority of the members of the committee . The matter shall be resolved and the board shall notify the architect, engineer, and awarding authority no less than five days prior to the time when bids are to be opened, unless all parties agree that a delay will not cause harm to others. (Emphasis added.)
Command argues that this statute applies here because the term "interested person" includes the City.
A statute may not be construed so broadly that it defeats the purpose for which it was enacted or leads to absurd consequences. Shelton v. Pavon , 16-0758, p. 9 (La. App. 4 Cir. 2/15/17), 212 So.3d 603, 610, writ granted , 17-0482 (La. 4/24/17), 219 So.3d 328, aff'd , 17-0482 (La. 10/18/17), 236 So.3d 1233. We do not read La. R.S. 37:2163(D) as requiring an awarding authority, such as the City, to object to its own license classification requirements. Furthermore, even if an objection were made by "any interested person," the only actions that could be taken under this statute would be to: (1) approve the project classification; or (2) add an additional classification. This statute does not authorize the deletion of the City's erroneous classification of "Public Works Construction." Command's argument lacks merit.
CAO Procurement Protest Policy No. 130
In its final waiver argument, Command contends that because no party (including *1023 the City) protested the licensing requirements in accordance with the administrative procedure set forth in CAO Procurement Protest Policy No. 130 (the "Protest Policy"), any objection was waived.
The City's Protest Policy, issued by the City's Chief Administrative Office, is intended to "ensure[ ] the prompt procurement of needed goods and services in accordance with all applicable laws by establishing clear procedures and standards for administrative protests of procurements by the City of New Orleans."See https://www.nola.gov/chief-administrative-office/policies/policies/no-130-procurement-protest-policy (last visited June 15, 2018).
The Protest Policy states:
A protest of a Selection must be filed no later than the earlier of: (1) the close of business fifteen (15) business days after the Protester knew or should have known of the factual basis for the protest; or (2) the City's execution of any contract arising from the Selection. Failure to timely protest a Selection waives any right to challenge the Selection.
First, we examine the definitions of the pertinent terms in the Protest Policy. "Protester" is defined as the "Person submitting a protest to a ... Selection." The term "Person" means "any individual, partnership, corporation, limited liability company, joint venture, or other business entity." The term "Selection" is defined as "the City's identification of the person to whom the City intends to award a contract or to qualify under a request for qualifications."
Here, the Protest Policy gives business entities such as Command the right to protest the City's selection of a bidder. Again, the Protest Policy cannot be read so broadly as to apply to the City. This argument is without merit.
In sum, none of Command's "waiver" arguments have any merit.
Preliminary Injunction: Gentilly Project
In Command's appeal, it contends that the trial court erred in denying its request for injunctive relief on the Gentilly Project because the City had no "just cause" to reject all of the bids. According to Command, the requirement in the Invitation to Bid that the contractor have a "Public Works Construction" license "clearly refer[red]" to "Municipal and Public Works Construction," so that Command was the lowest responsive bidder.
Just Cause
The Public Bid Law's "strict prohibition of waiver or deviation from bid forms and statutory law must ... be weighed with the statutory requirements that a public entity must have 'just cause' to reject any bid or reject all bids." Enmon Enters., L.L.C. v. City of New Orleans ex rel. New Orleans Aviation Bd. , 11-0459, p. 9 (La. App. 4 Cir. 9/28/11), 76 So.3d 548, 554.
The authority of a public entity to reject bids is generally found in La. R.S. 38:2214(B), which provides:
The public entity may reject any and all bids for just cause. Just cause for the purpose of the construction of public works is defined, but is not limited to the following circumstances:
(1) The public entity's unavailability of funds sufficient for the construction of a proposed public work.
(2) The failure of any bidder to submit a bid within an established threshold of the preconstruction estimates for that public work, as part of the bid specifications.
(3) A substantial change by the public entity prior to the award in the scope or design of the proposed public work.
(4) A determination by the public entity not to build the proposed public work within twelve months *1024 of the date for the public opening and reading of bids.
(5) The disqualification by the public entity of all bidders.
La. R.S. 38:2214(B)(1)-(5).
A public entity is vested with the power and discretion to reject all bids if none are satisfactory, as long as that discretion is exercised in a fair and legal manner and not arbitrarily. Lemoine/Brasfield & Gorrie Joint Venture, LLC v. Orleans Parish Criminal Sheriff's Office , 10-1220, p. 3 (La. App. 4 Cir. 3/30/11), 63 So.3d 1068, 1070.
Here, the Invitation to Bid on the Gentilly Project required all bidders to submit a Louisiana Contractors License Number with two specified classifications: (1) "Public Works Construction"; and (2) "Highway, Street & Bridge Construction." La. R.S. 37:2156.2 sets forth the major categories of contractor licenses:
I. Building construction
II. Highway, street, and bridge construction
III. Heavy construction
IV. Municipal and public works construction
V. Electrical work
VI. Mechanical work
VII. Hazardous materials
VIII. Plumbing
IX. Specialty classifications
The Louisiana State Contractors Licensing Board does not recognize a classification for "Public Works Construction."[2] In an affidavit, the City's Chief Procurement Officer explained why the Invitations to Bid erroneously required a non-existent license classification in "Public Works Construction" rather than "Municipal and Public Works Construction":
"Public Works Construction" was inadvertently placed on the Invitations to Bid. Our department misunderstood a directive to delete "Municipal and Public Works Construction" when drafting the Invitations to Bid. The directive received by our department was "No Municipal" for both bids. As evidenced by both Invitations to Bid, our office failed to delete the entire license classification and only deleted "Municipal."[3]
None of the bidders on the Gentilly Project have a contractor's license with the classification "Public Works Construction" because that category does not exist. However flawed the Invitation to Bid was, under La. R.S. 38:2212(B)(1), the City cannot waive or deviate from this requirement. We reject Command's contention that the City merely made a "spelling error" in its bid invitations, and that "Public Works Construction" is the same as "Municipal and Public Works Construction." The Public Bid Law must be strictly construed. Because no bidding contractor complied with the Invitations to Bid, the City was entitled to disqualify all of the bidders as non-responsive. See Broadmoor , 04-0212, p. 20, 867 So.2d at 663-64. We find that the City, therefore, had "just cause" under La. R.S. 38:2214(B)(5) to reject all of the bids on the Gentilly Project.
We also find that the City's decision to reject all of the bids was fair and reasonable. Although Command argues that no bidder was prejudiced by the erroneous license requirement, we note that this confusing error may have discouraged prospective bidders on the Gentilly Project because they could not possibly comply with a license requirement of "Public Works Construction." The City's *1025 decision to reissue the Invitation to Bid with clear and unambiguous instructions, and to rebid the contract, ensured fair competition among bidders and maintained the integrity of the bidding process.
Accordingly, we conclude that the trial court was not manifestly erroneous in denying Command's request for a preliminary injunction on the Gentilly Project.
Preliminary Injunction: Treme Project
In the City's appeal, it argues that because it had just cause for rejecting all bids on the Gentilly Project due to the City's flawed bidding process, it also had just cause to reject all bids on the Treme Project. According to the City, because both projects had the identical classification error in their Invitations to Bid, if the Gentilly Project's bidding process was flawed, then the Treme Project's bidding process was also flawed. We agree, and find that the City also had just cause for rejecting all bids on the Treme Project. The trial court, therefore, manifestly erred in granting Command's request for injunctive relief, and awarding the contract to Command.
Mandamus
Finally, Command contends that the trial court erred in denying Command's requests for a writ of mandamus awarding the Gentilly and Treme contracts to Command.
If a public entity does not have just cause to reject the low bidder or just cause to reject all bids, mandamus can be used to compel the awarding of the contract to the lowest responsible bidder under the Public Bid Law. Wallace C. Drennan, 00-1146, p. 14, 798 So.2d at 1177. Because we find that the City had "just cause" to reject all of the bids on the Gentilly and Treme Projects, we need not address Command's argument that the trial court erred in denying its requests for mandamus relief.
CONCLUSION
"[A] public entity cannot deviate in any manner from the requirements it sets forth in its bid documents and the requirements set forth in any aspect of the Public Bid Law." Enmon , 11-0459, p. 10, 76 So.3d at 554. In this matter, none of the bidders on the Gentilly and Treme Projects complied with the licensing requirement in the Invitations to Bid. We conclude, therefore, that the City had just cause to reject all bids on the two projects. Command, therefore, is not entitled to injunctive or mandamus relief. Accordingly, we affirm that portion of the March 15, 2017 judgment denying Command's request for a preliminary injunction on the Gentilly Project. We also affirm that portion of the March 15, 2017 judgment denying Command's requests for a writ of mandamus on the Gentilly and Treme Projects. We reverse that part of the March 15, 2017 judgment granting Command's request for a preliminary injunction on the Treme Project, and reverse the April 18, 2017 judgment granting Command a permanent injunction on the Treme Project. This matter is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

At the November 5, 2015 hearing, counsel for the parties jointly stipulated that Command's requests for a preliminary and permanent injunction in the consolidated matters would be tried together; and, in the event any preliminary injunction was issued for either matter, such preliminary injunction would be made permanent. The City reserved its right to appeal the issuance of any preliminary and/or permanent injunction.

Although the major categories have sub-classifications, there are none for "Public Works Construction."

According to the City, the only required license classification on both projects was "Highway, Street, & Bridge Construction."